FINE v. LASATER.

Opinion delivered December 8, 1913.

1. DEEDS—SUFFICIENCY OF CONSIDERATION.—An agreement upon the part of the grantee to support the grantor during his lifetime is a sufficient consideration for a deed conveying land. (Page 430.)

2. DEEDS—DELIVERY—CONCLUSIVENESS OF CHANCELLOR'S FINDINGS.—B. executed a deed to certain land to A., his daughter, in consideration of her promise to support him all of his life. A. was present when the deed was executed, consented to it, and fulfilled her agreement. B. deposited the deed with the cashier of a bank to be delivered at his death to A.'s husband. At B.'s death, A.'s husband received the deed and placed it on record. *Held*, the chancellor did not err in holding that the delivery of the deed to the cashier of the bank was, in effect, the present delivery of it to be held by the bank for the benefit of A. (Page 431.)

Appeal from Crawford Chancery Court; *J. V. Bourland*, Chancellor; affirmed.

*Sam Dent Bell*, for appellants.

When E. B. Bryant placed the deed in question, together with his will, in an envelope, and deposited same in the Bank of Mulberry, was this deposit irrevocable? The facts developed in evidence show that he did not intend to part with the control of the instruments, but, on the contrary, a clear motive appears why he should control, and intended to retain control of them. Intention is the test of delivery, and "there is no delivery of a deed unless what is said and done by the grantor and grantee manifests their intention that the deed shall at once become operative, and that the grantor shall lose control over the deed." 140 S. W. (Ark.) 593; 136 S. W. (Ark.) 172; 2 Words & Phrases, § 1967; 6 Gill & J. (Md.) 250; 6 Barb. (N. Y.) 190; 34 N. H. 460; 102 Wis. 251, 74 Am. St. Rep. 902; 75 Mich. 600; 106 Mo. 313; 158 Ill. 567. See also editor's notes, 53 Am. St. Rep. 539, *et seq.;* 89 Ark. 191; 24 Ark. 274; 16 Cyc. 568; 83 Mo. 333; 141 Ill. 400; 166 Mo. 110; 162 Ind. 154.

*Hill, Brizzolara & Fitzhugh,* for appellee.

1.  When Mr. Bryant deposited the deed in the bank for Mrs. Lasater, the bank was then holding the deed for her, and not for him, and this was a sufficient delivery. 13 Cyc. 571; 77 Ark. 89; 93 Ark. 324.

2.  If there was not a sufficient delivery of the deed, then it was deposited in the bank in the nature of an escrow to be delivered upon the payment of the consideration, which consideration has been paid by the appellee, and the deed has now become operative. 2 Mass. 446; 7 Am. Dec. 375; 187 Ill. 346; 122 Ala. 510; 140 Ill. 455; 85 Ind. 252; 90 Ia. 318; 114 Ind. 179; 53 Minn. 33; 2 Hill 659; 114 N. Y. 307; 7 N. D. 475; 104 Mo. 596; 34 N. C. 210; 85 Pac. 483; 98 Cal. 446; 34 N. H. 460; 30 Wis. 650; 37 Mich. 264; 34 N. Y. 92; 3 Metc. (Mass.) 412; 1 Devlin on Deeds (3 ed.), § 28; *Id.,* § 280a; *Id.,* § 281a; 50 Ark. 367; 74 Ark. 104-119.

HART, J.   Appellants instituted this suit in the chancery court against appellee, and their complaint alleges, in substance, that they, as well as appellee, Annaliza Lasater, are the heirs at law of E. B. Bryant, deceased. That during his lifetime, E. B. Bryant executed and acknowledged a deed to a tract of land owned by him to Annaliza Lasater. That said deed was never delivered to the grantee, but was wrongfully obtained by her, after the grantor's death, and placed on record. The prayer of the complaint is that the deed be cancelled as a cloud upon their title, and that the lands embraced in the deed be partitioned among the heirs of E. B. Bryant, deceased, according to their respective interests. The deed was a warranty deed in common form, and was executed on the 19th day of February, 1908, and purported to convey to the grantee, Annaliza Lasater, a tract of land which is admitted to be worth eight thousand dollars. The deed recites: "That we, E. B. Bryant and Julia A. Bryant, his wife, for and in consideration of the sum of taking care of us, E. B. Bryant and Julia A. Bryant, during our natural lives to us paid by Annaliza Lasater; said Annaliza Lasater to keep, and to care for E. B. Bryant and

Julia A. Bryant during our natural lives, did hereby grant, bargain, sell and convey unto the said Annaliza Lasater and unto her heirs and assigns forever, the following lands lying in the county of Crawford, and State of Arkansas, towit.''

The deed was written by J. W. Storie, a justice of the peace, and acknowledged by E. B. Bryant and his wife, Julia A. Bryant, and was left in the possession of E. B. Bryant. About four days after this, Mr. Bryant went to the office of Mr. Storie and made his will. He placed the will and the deed in an envelope, and wrote thereon: ''Deliver to N. A. Lasater at my death. (Signed) E. B. Bryant.'' He carried the envelope and delivered it to the assistant cashier of the bank of Mulberry, with instructions to deliver it to N. A. Lasater after his death. After he died, the envelope was delivered to N. A. Lasater, who opened it, took the deed out, and placed it upon record.

J. W. Storie testified that E. B. Bryant, Julia Bryant, his wife, and Annaliza Lasater were all present in the room when the deed was executed. That he left the deed there after it was executed, and no further reference was made to it. That he remained with them for about half an hour, engaged in social conversation. That he was a frequent visitor in the home of the Lasaters, and that Mr. Bryant and his wife continued to live with them until his death, and that the relation between the parties always seemed pleasant.

Mr. Bryant was seventy-nine years of age when he died. The cashier of the bank testified that he did not know what the envelope contained, but that Mr. Bryant delivered it to him and instructed him to deliver it to N. A. Lasater after his death. That in accordance with his custom he deposited the envelope in a box with the letter ''B'' on it, which contained papers belonging to Mr. Bryant and other customers whose names began with B. That Mr. Bryant never thereafter asked to see the envelope or exercised any control over it. After Mr. Bryant's death, the envelope was delivered to N. A. Las-

ater, who opened it and found that it contained the deed in question and also Mr. Bryant's will.

Mrs. Mattie Fine, one of appellants, stated that she was a daughter of Mr. Bryant, and that some time during the year before he died her father told her that it was not recorded that Annaliza Lasater would get everything he had, and that if things did not go to suit him the papers could be easily destroyed. The wife of the grandson of Mr. Bryant testified that she was present and heard this conversation.

Julia Bryant, the wife of E. B. Bryant, testified: My husband, my daughter, Annaliza Lasater, and myself were all present when the deed in question was executed. My daughter knew the terms of the deed, and knew that the property was being conveyed to her in consideration of her taking care of Mr. Bryant and myself. She agreed to the terms of the deed. Mr. Bryant told me that he had deposited the deed in the bank to be held for our daughter, Annaliza Lasater. My husband and I resided at the home of our daughter from the time the deed was executed, on the 19th day of February, 1908, until the date of his death, on the 5th day of August, 1912. During all this time, and for several years prior thereto, my daughter took care of us and gave us every attention that we needed. I still reside with my daughter, and intend to remain with her as long as I live. She is my only child, the other heirs of Mr. Bryant being children by his first wife.

Annaliza Lasater testified: I was present at the time when the deed in controversy from my parents was executed to me. I knew that the deed was made in consideration of my taking care of my father and mother during their natural lives, and I accepted these terms. My father and mother had been living with me for several years before the deed was executed, and continued to live with me up to the date of my father's death. My mother still lives with me; and I intend to take care of her until she dies. It was at one time thought that my father had cancer, but he got better of that before he

died. I gave him and mother every care and attention that could be bestowed upon them, and intend to continue to do so in regard to my mother until her death. I knew that the deed was placed in the bank for me.

N. A. Lasater, the husband of Annaliza Lasater, testified that he was told about the execution of the deed and its terms, and agreed to the same. That the envelope containing the deed and Mr. Bryant's will was delivered to him after Mr. Bryant died, and that he filed the deed for record. That he was also named as executor of the will.

Two other witnesses testified that they were well acquainted with E. B. Bryant and that he told them he had executed a deed to his daughter, Annaliza Lasater, to the land in controversy, and that he had placed the deed in the Bank of Mulberry and that the bank was holding it for his daughter.

By the terms of the will, certain specific bequests were made to the children of Mr. Bryant, other than Annaliza Lasater, and the amount of these bequests more than absorbed his remaining estate. The chancellor found in favor of appellees, and the complaint was dismissed for want of equity. The case is here on appeal.

Counsel for appellees seek to uphold the decree on the ground that the deed was in escrow, or was a deed as in the nature of an escrow. In the case of *Masters* v. *Clark*, 89 Ark. 191, the court said:

"To constitute an instrument an escrow, it is absolutely necessary that the deposit of it should be irrevocable; 'that is, that when the instrument is placed in the hands of the depositary it should be intended to pass beyond the control of the grantor for all time, and that he should actually lose the control of and dominion over the instrument; for, in case the deposit is made in furtherance of a contract between the parties, the contract must be so complete that it remains only for the grantee or obligee or another person to perform the required condition, or for the event to happen, to have the instru-

ment take effect according to its import.' 16 Encyclopedia of Law and Procedure, 568, and cases cited; 1 Am. & Eng. Encyclopedia of Law (2 ed.) 336.''

In the case of *Foster* v. *Mansfield,* 3 Metcalf (Mass.) 412, 37 Am. Dec. 154, Shaw, Chief Justice, speaking for the court, said: ''Whether, when a deed is executed, and not immediately delivered to the grantee, but handed to a stranger, to be delivered to the grantee at a future time, it is to be considered as the deed of the grantor presently, or as an escrow, is often matter of some doubt; and it will generally depend rather on the words used and the purposes expressed than upon the name which the parties give to the instrument. Where the future delivery is to depend upon the payment of money or the performance of some other condition, it will be deemed an escrow. Where it is merely to await the lapse of time, or the happening of some contingency, and not the performance of any condition, it will be deemed the grantor's deed presently. Still, it will not take effect as a deed, until the second delivery; but when thus delivered, it will take effect by relation, from the first delivery. But this distinction is not now very material, because where the deed is delivered as an escrow, and afterward, and before the second delivery, the grantor becomes incapable of making a deed, the deed shall be considered as taking effect from the first delivery, in order to accomplish the intent of the grantor, which would otherwise be defeated by the intervening incapacity.''

Tested by this rule, we think the contention of counsel for appellees is correct. An agreement upon the part of the grantee to support the grantor during his lifetime is a sufficient consideration for a deed conveying land. *Boyd* v. *Lloyd,* 86 Ark. 169.

The testimony on the part of appellees shows that appellee Annaliza Lasater knew the terms of the deed, and accepted them. In compliance therewith, she did take care of her father and mother for over four years, until her father died, and is continuing to take care of her mother until her death. Both she and Mrs. Bryant

testified that her father told her that the bank was holding the deed for her. Mrs. Bryant testified that she was still living with her daughter, and intended to do so until her death, and that she was satisfied that the deed should be delivered to her daughter. Thus, it will be seen that appellee had substantially performed the condition in the deed, and the delivery to her was not wrongful.

Whether, in a given case, the delivery of a deed to a third party to be delivered by him to the grantee after the grantor's death is to be deemed a delivery *in praesenti* or not is generally a question of fact, depending on the conduct and intention of the parties to such transactions. *Battle* v. *Anders,* 100 Ark. 427, and cases cited.

The grantor must deliver the deed to a third person for the use of the grantee, and in some way express his intention to that effect; and at the time of such delivery to the third person, he must part both with the possession of the deed and with all dominion and control over it. We think that under the facts shown in the case at bar, the chancellor did not err in holding that the delivery of the deed to the cashier of the bank was, in effect, the present delivery of it to be held by the bank for the benefit of appellee, Annaliza Lasater. The testimony on the part of appellees shows that the grantee in the deed was present when it was executed, knew its terms, and accepted them. The grantor told his wife and his daughter, the grantee in the deed, that he would place it in the bank to be delivered to the grantee after his death. He lived for over four years after this time at the home of the grantee and never, by word or act, showed that he was dissatisfied with having executed the deed, nor did he ever attempt to exercise any control or dominion over the deed. He always referred to the place conveyed by the deed as being his daughter's and told various persons that he had deeded the place to his daughter. Under these circumstances, we do not think the finding of the chancellor can be disturbed on appeal.

The decree will be affirmed.