WATSON v. HILL.

Opinion delivered May 8, 1916.

1. DEEDS—DELIVERY.—There is a consummated delivery of a deed when it has passed from the grantor, without right of recall, to the grantee or to some third person for his use.

2. DEEDS—DELIVERY—INTENTION.—The evidence held to show that deceased, in executing deeds to his lands to his children, and delivering the same to a bank, intended a delivery to the grantees.

Appeal from Clay Chancery Court; *Charles D. Frierson,* Chancellor; affirmed.

*G. B. Oliver,* for appellant.

1. The testimony of Williams as to his *understanding or opinion* was incompetent.

2. The deeds were never delivered. Devlin on Deeds, 263b; 88 Pac. 806; 100 Ark. 427, 431; 74 *Id.* 104; 77 *Id.* 89; 51 *Id.* 530; 63 S. E. 82; Devlin on Deeds, 275, 275b; 83 S. W. 747; 58 N. E. 439; 90 *Id.* 402; 85 S. W. 474; 77 Ark. 89; 74 *Id.* 104; 98 *Id.* 466; 93 *Id.* 324; 84 *Id.* 610; 110 *Id.* 425; 81 Pac. 1120.

*C. T. Bloodworth,* for appellees.

1. The deeds were delivered. A delivery to a third party to be held for the grantee is a sufficient delivery. 51 Ark. 530; 48 A. L. R. 136; 75 S. W. 321; 175 S. W. 623; 13 Cyc. 565.

2. The deeds were left at the Bank of Corning to be delivered to the grantees and Watson had no further dominion over them. 82 Ark. 492; 51 *Id.* 530; 96 *Id.* 589; 113 Ark. 289; 108 *Id.* 53; 134 S. W. 626; 13 Cyc. 569; 116 Ark. 487.

HART, J. Maggie Watson instituted this action in the chancery court against Mary Hill, *et al.,* to cancel certain deeds executed to them by her husband and have homestead and dower awarded her in the lands described in the deeds.

On the 15th day of March, 1915, Samuel Watson died in Clay County, Arkansas, leaving surviving him his widow, Maggie Watson, and Mary Hill and four children by a former wife. In October, 1914, Samuel Watson and

Maggie Watson were married. At that time he owned about two hundred acres of land, including his homestead, in Clay County, Arkansas. Maggie Watson also had children by her former husband. She disagreed with her husband because he ordered her children around and left him about two weeks after they were married. Mr. Watson was in ill health at the time and sent for a married daughter to come and live with him. His ill health continued and his wife also came back and stayed with him a part of the time. On the 3d day of March, 1915, Samuel Watson executed five deeds conveying to each of his children forty acres of land. His wife joined with him in the execution of the deeds. By direction of Mr. Watson, the justice of the peace, who wrote the deeds and took the acknowledgments thereto, delivered them to the cashier of a bank in Clay County. Watson died twelve days after executing the deeds. After his death his children went to the cashier of the bank and demanded the deeds. The deeds were delivered to them and by them filed for record. Subsequently the widow of Samuel Watson instituted this action to cancel the deeds and to have set aside to her, her dower and homestead in said lands.

The chancellor found for the defendants and it was decreed that the complaint of the plaintiff be dismissed for want of equity. The plaintiff has appealed.

The correctness of the decision of the chancellor depends upon whether or not there was a delivery of the deeds. It is well settled that there is a consummated delivery of a deed when it has passed from the grantor, without right of recall, to the grantee or some third person for his use. *Fine* v. *Lasater,* 110 Ark. 425. In the present case, H. H. Williams, the justice of the peace testified: I knew Samuel Watson for thirty-three years prior to his death and lived near him. He owned two hundred acres of land and lived on part of the land. I prepared the deeds and took the acknowledgments thereto at the request of Mr. Watson. He deeded a forty acre tract to each of his children. His wife understood all about the transaction. Mr. Watson directed me to

deliver the deeds to the Bank of Corning. I put the deeds in an envelope and delivered them to the bank and took a receipt therefor. The receipt read: "Received of H. H. Williams one sealed envelope said to contain valuable papers, the property of Samuel Watson, or belonging to Samuel Watson one of the two." I took this receipt on my own motion. Later I handed it to Watson, at the time, telling him that it was a receipt for the deeds. He called one of his daughters and told her to put it in his pocket book with other papers back of the stove. She did so. He was several times asked, if Mr. Watson had not directed him to put the deeds in the bank for his children to be delivered to them after his death. He replied that Watson did not say that; that Mr. Henry, the cashier of the bank had asked him the same question. We quote from his testimony as follows:

"Q. When you brought the deeds to the Bank of Corning and delivered them there, that ended yours and Mr. Watson's connection with them so far as you know?

A. Yes, sir.

Q. And the only duty of the bank was delivering them to the children after his death?

A. He did not instruct me about that. About what was to be done with them. I supposed so. I had nothing to do with that. Mr. Henry asked me about that, and I said I had nothing to do with that. It was the purpose of making the deeds. He talked with me freely about it."

(2) Mrs. Williams testified that she had a conversation with Mrs. Watson after she had signed the deeds. She said that Mrs. Watson told her that she was willing to sign the deeds because she did not live with her husband very long and had not helped him to make anything; that therefore she did not feel like she was entitled to the land but thought the children ought to have it. Two of Mr. Watson's children also testified that they heard their step-mother ask their father to make the deeds and said she stated that she would sign them. Another daughter stated that Mrs. Watson told her that she had signed the deeds and that she did not want the land that

their father and mother had worked and paid for. Another witness stated that Mr. Watson told them after he had executed the deeds that he had made a mistake and had given the wrong forties to two of his children but that they could correct this mistake. It sometimes happens as in *Battle* v. *Anders,* 100 Ark. 427, that a grantor makes a voluntary conveyance of his property and holds the deed under circumstances showing that he had no intention that it should be effective during his life time but holds it under a mistaken belief that the deed will operate in lieu of a will. Such, however, is not the case here. The facts of this case brings it within the rule announced in *Fine* v. *Lasater, supra.* We think the chancellor was warranted in finding that the grantor parted with all control over the deeds with intention to pass title to the lands and that there was a delivery of the deeds. Delivery is largely a question of intention. Here it was shown that it was the intention of the grantor to give his lands to his children. His wife was consulted about the matter and agreed to join with him in the execution of the deeds. It is true the justice of the peace stated that Watson gave him no other directions than to deliver the deeds to the Bank of Corning but he does state that Watson had talked freely to him about making the deeds and that the purpose of excuting them was to pass the title in the lands to his children. The other evidence tends to corroborate this.

Watson stated that he had made a mistake in two of the deeds, that he had given to one of his children land that he had intended to give to another but stated that his children could correct that. This was a circumstance tending to show that he realized that he had vested the title to the lands in his children when he executed the deeds. It was shown by others of his children that Mrs. Watson had asked him to execute the deeds and knew that it was his purpose to vest the title to his lands in his children by executing the deeds. Therefore the decree will be affirmed.