## CAVETT *v.* PETTIGREW.

Opinion delivered December 1, 1930.

*C. D. Atkinson* and *Karl Greenhaw*, for appellant.

*John Mayes*, for appellees.

SMITH, J. Appellee, Mrs. Mollie Pettigrew, who was the plaintiff below, brought this suit against appellant, J. M. Cavett, who is her father, on December 21, 1928, and, for her cause of action, alleged the following facts: That her father executed and delivered to her a deed on November 27, 1916, for the recited consideration of love

and affection and $1 cash in hand paid. She accepted the deed and kept it at her home in a satchel in a trunk, where it remained until about 1925, when she discovered that the deed had been abstracted from the trunk.

It was further alleged that in 1922 her father had mortgaged the land to secure a loan of $3,000. She prayed that the court make the finding that the lost deed be restored, and that she have judgment against her father for the amount of the mortgage which he had placed upon the land.

The answer admitted the execution of the deed, but denied there had been a delivery for the purpose of making the deed effective as a conveyance of title.

In addition to his daughter, Mrs. Pettigrew, Mr. Cavett had two other children, both sons, and an estrangement had grown up between Mrs. Pettigrew and one of these sons, and there was a coolness between her and the other, a fact of which Mr. Cavett was advised. Mrs. Pettigrew testified that in 1916, the year in which the deed was made, her father took a trip, and just before leaving he executed the deed and delivered it to her, and she kept it in her possession until someone stole it from her. On her cross-examination Mrs. Pettigrew admitted that her father said to her, when he delivered the deed to her, that he was going away and if anything happened to him he wanted her to have her share of his estate, a matter about which he was apprehensive on account of her trouble with her brothers.

Mr. Cavett's version of the delivery of the deed was as follows: "She was to take it home and keep it. If I came back, she was to give it back. I objected to her having the deed recorded, and told her, if anything happened to me, she had the privilege of recording it later on." Mr. Cavett returned safely from his trip, and did not take up the deed, and he later told some of his neighbors that he had made the deed, and he frequently referred to the land thus described as Mrs. Pettigrew's farm.

The testimony is conflicting as to how Mrs. Pettigrew came to part with the possession of the deed. She admits that it was never recorded, but testified that she kept it until about 1925, when it was stolen from her. Mr. Cavett testified that, when he delivered the deed to his daughter, she was instructed not to place it of record unless something happened to him, and it is an admitted fact that it was never recorded. When asked what kind of a deed it was he had executed, Mr. Cavett answered: "A deed of insurance. If I didn't get back (from the trip), the land was hers," but if nothing happened it was to remain his.

Mr. Cavett testified that the deed was delivered to him, and that it was thereafter destroyed. Mrs. Pettigrew denied this, and testified that she never voluntarily parted with the possession of the deed, and that it had been stolen from her trunk. She admitted that, although the deed was in ordinary form, her father had stipulated that he should have the rents and profits of the farm during the remainder of his life; while Mr. Cavett denied that he retained possession of the land under an agreement of that character.

It appears from the testimony that Mr. Cavett assessed the property for taxes in his own name, and paid the taxes in his own name; that the insurance policies were in his name; and that he paid the premiums and, when a loss occurred, he collected the insurance and repaired the buildings at his own expense. Mr. Cavett rented the farm to various persons, including plaintiff's husband, his son-in-law, and in 1922 he placed a mortgage on the farm for the sum of $3,000. Mrs. Pettigrew testified that she knew nothing about the mortgage for several years; while Mr. Cavett testified that it was given to secure money to pay an indebtedness due by Mrs. Pettigrew and her husband, and that this lawsuit to restore the deed was precipitated when he sued Mr. Pettigrew and recovered judgment against him for the money advanced.

It is elementary law that delivery is essential to the validity of a deed, but it is frequently a mixed question of law and fact as to whether there has been a delivery, and the law on the subject has been declared in a number of our cases. *Russell* v. *May,* 77 Ark. 89, 90 S. W. 617; *Maxwell* v. *Maxwell,* 98 Ark. 466, 136 S. W. 172; *Battle* v. *Anders,* 100 Ark. 427, 140 S. W. 593; *Stephens* v. *Stephens,* 108 Ark. 53, 156 S. W. 837; *Faulkner* v. *Feazel,* 113 Ark. 289, 168 S. W. 568; *Watson* v. *Hill,* 123 Ark. 601, 186 S. W. 68; *Fine* v. *Lasater,* 110 Ark. 425, 161 S. W. 1147; *Bray* v. *Bray,* 132 Ark. 438, 201 S. W. 281; *Davis* v. *Davis,* 142 Ark. 311, 218 S. W. 827; *Hardin* v. *Russell,* 175 Ark. 30, 298 S. W. 481.

In the case of *Battle* v. *Anders, supra,* it was said: "The important question in determining whether there has been a delivery is the intent of the grantor that the instrument should pass out of his control and operate as a conveyance. The intent of the grantor is to be inferred from all the facts and circumstances adduced in the evidence. His acts and conduct are to be regarded in ascertaining his intent."

When this test is applied to the facts in the instant case, we conclude there was no delivery of the deed. It is true there was a manual delivery of that instrument, which, between parties dealing at arms' length, would be highly persuasive and ordinarily conclusive. But here was a conveyance the consideration for which was love and affection, and there was the trusting confidence of the father, the grantor, in his daughter, the grantee, that she would respect his commands and would not record the deed at all, and would not regard it as anything more than an "insurance deed," to be effective in the event only that something happened to the grantor. There was lacking that surrender of dominion and that right to possess and control which is essential to delivery.

A right to the possession and control of the deed was reserved, and there was, therefore, no delivery within the meaning of the term as completing a conveyance of real estate. Mr. Cavett testified that his daughter sur-

810

rendered the deed upon demand. If true, this testimony would be fairly conclusive of the conditional character of the original delivery, but Mrs. Pettigrew denies that she surrendered the deed. But, with all the suspicion and distrust existing between Mrs. Pettigrew and her brothers, she did not record the deed, and her father continued down to the time of the institution of this suit to exercise all the acts of ownership as fully and completely as if the deed had never been executed.

We conclude, therefore, that the deed had never been delivered within the meaning of the law, and the decree of the court below restoring the deed will be reversed, and the cause dismissed.