ARKANSAS SUPPLY, INC. *v.* James
K. YOUNG et ux

78-284                                    580 S.W. 2d 174

Opinion delivered March 12, 1979
(Division II)
[as amended on Denial of Rehearing May 21, 1979.]

*Spitzberg, Mitchell & Hays,* by: *Theodore C. Skokos* and *Beresford L. Church, Jr.,* for appellant.

*Luther B. Hardin,* for appellees.

FRANK HOLT, Justice. The appellant contends that the chancellor erred in cancelling its mortgage. Appellant argues that its mortgage was and is valid, because the mortgagors (Curtis and Virginia Wright) were the equitable owners of the real property at the time they mortgaged the property to appellant. The court found that the Wrights had no mortgageable interest in the property. A personal judgment however was rendered in favor of the appellant against the Wrights.

On November 4, 1976, Vernon and Bertha Stewart, sellers, and Curtis and Virginia Wright, purchasers, entered into a written "Escrow Agreement," which stated that the sellers, simultaneously with the execution of the agreement, delivered their warranty deed for 2.46 acres to a bank as escrow agent. The deed was to be delivered to the purchasers, the Wrights, only upon their payment of the $9,250 purchase

price plus interest to the escrow agent. The initial payment of $150 was acknowledged. The balance was to be paid in $150 monthly installments. The escrow agreement further provided that the purchaser would not allow any lien on the property or do any act to lessen the sellers' security. If the purchasers defaulted under the agreement by failing to make payments, time being of the essence, the full amount would become due after the sellers gave 30 days' notice to the purchasers and the escrow agent of their intent to exercise the option to accelerate. If the full amount was not paid or the agreement made current within 30 days, the escrow agent was to deliver the deed to the sellers, any sums paid would be retained as liquidated damages, and the purchasers would lose all rights under the agreement. This agreement was recorded on April 8, 1977. A second agreement followed on April 15, 1977, which was substantially the same as the first except the purchase price was increased to $15,000. This agreement was not recorded. Pursuant to the terms of the agreement, the Wrights, as purchasers, went into possession of the property and began improvements. However, they made no payment on the purchase price other than the original $150. Consequently, by letter dated July 19, 1977, Stewart's attorney notified the Wrights that, pursuant to the escrow agreement, if full payment of the $15,000 plus accrued interest was not paid within thirty days of their receipt of the letter, Stewart would recall the deed from the escrow agent and consider the transaction cancelled and the contract void. There was no compliance from the Wrights. To the contrary, on August 19, 1977, the Wrights executed a $37,889.04 mortgage (without a note) on the property in favor of appellant Arkansas Supply, Inc. It appears the Wrights were indebted to appellant for materials and supplies used on various building projects. Appellant agreed to accept this mortgage in lieu of filing a lien on an apartment project which the Wrights said they had sold. The Wrights continued their default in payments to the Stewarts. On October 13, 1977, appellee James K. Young prepared a release and disclaimer which Mr. and Mrs. Wright signed relinquishing any interest they had in the property and authorizing delivery of all documents by the escrow agent to the Stewarts. On that same day, Young paid the Stewarts $15,770 for a deed to the

property and also paid the Wrights $3,000 for a release of any claim they might have on the property.

Appellant now contends that the Wrights were, on the date of the execution of the mortgage, the equitable owners of the property, that the "mortgage at that time was valid, and remained so attached as a lien on the land and improvements despite the attempted cancellation on October 13, 1977, engineered by the Appellee." They argue that this court has invariably held that a purchaser under an executory contract for the sale of land has an equitable interest in that property. Appellee responds that a long line of Arkansas cases stand for the proposition that escrow agreements, as here, whereby the deed is to be returned to the grantor if the purchase price is not paid, do not provide the purchaser with sufficient title to give a mortgagee an *in rem* mortgage against the property, although the purchaser was in possession of the property. In *Mansfield Lumber Co.* v. *Gravette,* 177 Ark. 31, 5 S.W. 2d 726 (1928), in discussing whether a materialman's lien had attached to certain property, we said:

> It is earnestly contended by counsel for appellant that Mrs. A. L. Beason had an equitable interest in the lots . . . . We cannot agree with counsel in this contention. It is true that Miss Gravette executed a deed to Mrs. Beason to the lots in question, but the deed was placed in escrow . . . . to be turned over to the grantee in the deed when the payments of purchase money were made; but, in case the payments of the purchase money were not made as expressed in the deed, the deed was to be returned to the grantor and become inoperative. When a deed is delivered merely as an escrow to take effect upon the performance of some condition by the grantee in the future, no title passes until the condition has been performed . . . However, if we are correct in holding that the deed was placed in escrow upon the condition that it did not become operative until the balance of the purchase price was paid, the grantee acquired no interest of any kind in the property, because she did not pay any of the balance of the purchase price, and her rights under the contract became forfeited for failure to make such payments.

Where the grantee performs the required conditions, he may compel the grantor to deliver the deed, held in escrow, to him. *Tombler* v. *Sumpter,* 97 Ark. 480, 134 S.W. 967 (1911).

Here, however, the purchasers, the Wrights, only paid $150 on the agreed purchase price of $15,000. The Wrights, as grantees, acquired no interest in the property until the conditions of the escrow agreement were met. Not having met them, the court correctly cancelled appellant's mortgage.

In our view, *Mansfield Lumber Co.* v. *Gravette, supra,* has become a rule of property. Therefore, here we decline to modify or overrule it. However, we will reconsider its applicability to any escrow contract, similar to the one at bar, entered into after this opinion becomes final.

Affirmed.

We agree: HARRIS, C.J., and FOGLEMAN and HICKMAN, JJ.

BYRD and PURTLE, JJ., would grant the rehearing.

CONLEY BYRD, Justice, dissenting. In *Mansfield Lumber Co.* v. *Gravette,* 177 Ark. 31, 5 S.W. 2d 726 (1928), the decree which this court affirmed permitted the lien holder to remove the improvements from the lots. The judgment of the trial court here should be reversed to permit appellant *Arkansas Supply, Inc.* to remove from the lots the apartment house constructed upon the lots by the Wrights. Otherwise the appellees who placed the Wrights in possession, are unjustly enriched. I cannot agree with the majority that *Mansfield Lumber Co.* v. *Gravette, supra,* authorizes such unjust enrichment by a vendor who places a purchaser in possession under an escrow agreement.

Since appellees, or their predecessor in title, had placed the Wrights in possession for construction purposes, I would apply Restatement, Restitution § 52(2) which provides:

(2) A person who, because of mistake of law, reasonably

but erroneously believing that he, or a third person, on whose account he acts is the owner:

> (a) causes improvements to be made upon the land of another, is entitled to restitution for the value of the labor and materials used therein to the extent that the land is increased in value if the mistake is reasonable, . . . "

For the reasons stated herein, I respectfully dissent from the denial of the petition for rehearing.

PURTLE, J., joins in this dissent.