Dorothy Dixon HATCHETT, et al. *v.*
Clifford TERRY, et al.

CA 03-847                                    190 S.W.3d 302

Court of Appeals of Arkansas
Division IV
Opinion delivered September 8, 2004

*Herby Branscum, Jr.*, for appellants.

*John C. Aldworth*, for appellees.

JOHN F. STROUD, Chief Judge. This appeal raises questions concerning the effect that a sale of real property under escrow contracts would have on a subsequent mortgage covering the same land. The trial court quieted title in the purchasers under the escrow contracts, which were also contracts of sale, and the mortgage holder appeals. We find no error and affirm.

In 1982, appellant Dorothy Dixon Hatchett[1] conveyed some 204 acres located in Van Buren County to Earl Collister and Mary Collister. She took a mortgage on the property. The Collisters planned to resell the property by escrow contracts. In 1987, the original mortgage was released and another mortgage was executed to appellant. The 1987 mortgage did not declare that it was either an extension of, or a replacement for, the 1982 mortgage. In

---

[1] Dorothy Hatchett later conveyed her interest in the property to the Dorothy Dixon Hatchett Revocable Trust. We refer to appellant as including both Dorothy Hatchett and Linda Bly as trustee of the Dorothy Dixon Hatchett Revocable Trust.

1990, the Collisters executed still another mortgage to appellant. By 1994, the notes purportedly secured by the 1987 and 1990 mortgages were in default and appellant instituted foreclosure proceedings against the Collisters.[2] Appellant obtained a foreclosure decree in February 1995. The decree provided that no determination about a sale would be made for thirty days to allow time for Mary Collister to account for the sales contracts that were then outstanding. Collister then filed for bankruptcy protection without providing the accounting. Ultimately, Collister received a personal discharge, and appellant was allowed to pursue her claims *in rem* against the property. None of the appellees were made a party to the foreclosure suit despite their escrow contracts being of record at the time the 1987 and 1990 mortgages were recorded.

Appellees Clifford and Bonnie Terry, Billie and Barbara Stroud, John Napier, Randy and Jill Terrell, Roland and Betty Baugh, and Ailene Hagee purchased land from the Collisters under escrow contracts between 1982 and 1986. They received their deeds a few years later.[3] Appellees Clifford and Bonnie Terry filed the present action seeking to quiet title under their warranty deed and escrow contract because they paid off their contract and obtained a deed prior to the release of the 1982 mortgage and thereby became exempt from any sale under the foreclosure decree in appellant's suit against Collister. An amendment to the complaint added the other appellees. Appellant answered, denying the allegations of the complaint and denying the existence of the escrow agreements between Collister and appellees. Appellant also filed a motion to dismiss, alleging that appellees failed to join Collister as a necessary party and suggesting that appellees intervene in the pending foreclosure suit. The trial court denied appellant's motion to dismiss, finding that Collister was not a necessary party. Appellant filed a counterclaim seeking to have title to the property quieted in her, alleging that appellees knew of the mortgage to appellant at the time they purchased their properties.

Mary Collister testified that she and her late husband Earl were in the business of selling property when they purchased 204

---

[2] Earl Collister died prior to the entry of the foreclosure decree.

[3] The Terrys recorded their deed on May 30, 1990. The Strouds recorded a deed to one tract on August 3, 1992, and a deed to a second tract on June 6, 1988. John Napier recorded his deed on August 2, 1993. The Terrells recorded their deed on May 14, 1985. The Baughs recorded their deed on February 27, 1992. Ailene Hagee recorded her deed on April 2, 1993.

acres from appellant in 1982 and gave her a mortgage as part of the transaction. She testified that she and her husband sold property on escrow contracts. She testified that it was her understanding that, when the land under the escrow contracts was paid for, the purchasers would receive a release from appellant. Collister admitted that there were second and third mortgages to appellant but did not know how many contracts had been entered into at that time or whether her purchasers knew of the mortgages to appellant. She admitted that the mortgages were not paid and that appellant had filed a foreclosure action against her. She stated that she filed for bankruptcy and received a personal discharge. Collister also stated that, at the time of the foreclosure action in 1994, twenty-eight acres had been released but only $11,000 had been paid on the note to appellant. She stated that her bankruptcy listed any potential claims against her but was uncertain whether this included possible claims by appellees. She also admitted that the accounting provided for in the foreclosure decree was never given.

She stated that the escrow sales were handled by Clinton Real Estate and its agents Les Frith, Jerel Brown, and David Tomlinson, and that she did not know how much money she received for the escrow sales to appellees. She also stated that each escrow agreement reflected an outstanding lien on the property and that the purchasers knew that there was a lien on the property. Collister stated that she did not know whether appellees had received deeds to the properties. She admitted that she had no documentation stating that appellant would release the property. Collister also admitted that she had never told appellant about the escrow contracts or the specific properties that had been sold. She also stated that her husband was the active party in the escrow transactions.

Jerel Brown testified that he purchased Clinton Real Estate in 1984 and was aware of the transaction between appellant and Mary Collister whereby appellant sold the property to the Collisters and the Collisters then marketed smaller parcels of the property. Brown testified that there was an outstanding mortgage to appellant and that it stated in the note that there would be releases if parcels needed to be released. He testified that the note also provided that appellant would honor third-party contracts. Brown stated that he sold the property to the Terrys, the Strouds, and to John Napier. He was also aware of the transaction with Ailene Hagee. He also stated that, when he purchased the business in 1984, he did not want to be the escrow agent and that David

Tomlinson became the escrow agent. Brown stated that he told the appellees that, when they paid off their property, the lien to appellant would be released. He testified that appellant requested that the escrow agreements be recorded. He stated that appellees knew that there was an outstanding mortgage when they purchased the property. He testified that the 1982 mortgage was released and that another mortgage was given by the Collisters but that he was unaware of the details of that transaction. He also stated that he did not make any sales after 1987. Brown testified that he relied on a provision in the note from the Collisters to appellant providing that appellant would release property upon being paid $500 per acre. He testified that appellant told him that she realized she would have to honor some third-party contracts as provided by the 1982 note. He also stated that appellant prepared her own releases.

Several of the appellees testified about entering into the escrow contracts and receiving their deeds. They testified that the mortgage was indicated as a lien on the land but that it was to be paid off and released when they paid off their escrow contracts. They also indicated that they were not notified of either Collister's bankruptcy or the foreclosure sale. All testified that they paid off their escrow contracts and received deeds to their properties, which were properly recorded. They also all indicated that no one told them who would be responsible for obtaining the releases from appellant.

David Tomlinson, a former owner of Clinton Title Company, testified that he administered some of appellees' escrow contracts. He testified that, when the contracts were paid off, he delivered the deeds to appellees that had been held in escrow. He admitted that, when the deeds were recorded, he did not check to see if the liens had been paid off. He also described the 1982 mortgage as being released prior to the 1987 mortgage being recorded. He also testified that, at the time the 1982 mortgage was released, appellees' escrow contracts were on record but that the 1987 and 1990 mortgages covered the same tracts and created a cloud on the title. Tomlinson opined that appellees had an equitable interest in the property by virtue of the escrow contracts. He stated that he received funds from appellees under the escrow contracts and remitted those funds to Mrs. Collister's account. He was aware of the outstanding mortgage and that the proceeds were supposed to pay that mortgage. He also stated that it was Mrs. Collister's responsibility to pay that obligation. He testified that

appellant was aware of these escrow contracts and that, if she was not receiving payment, she would have discussed the matter with him. Tomlinson admitted that appellant, as a lienholder, never instructed him to do anything and never told him that she was not receiving her payments. He also admitted that appellant was not a party to the escrow agreements.

Linda Bly, appellant's niece and the trustee of the Dorothy Dixon Hatchett Revocable Trust, testified that the trust is the owner of the 204-acre tract. She also stated that appellant was an attorney, a realtor, and an abstractor but that she never actively practiced law. She stated that appellant closed her business in approximately 1987 because of failing health and that there had been a steady decline in her health since 1990. She also stated that appellant's memory was unreliable. She stated further that she discussed the case with appellant and that appellant told her that she never intended to give anyone anything without being paid for it. She stated that appellant said that there was no intention to release the lien without being paid.

The trial court issued a letter opinion in which it noted that appellees' interests in their properties were filed of record before the foreclosure and thereby protected by Ark. Code Ann. § 14-15-404 (Repl. 1998). The court also noted that, when the 1982 mortgage was released, the lands owned by appellees had already been conveyed to them and the Collisters could only mortgage that property in which they had an interest. The court ruled that the foreclosure sale should go forward, except with respect to the lands conveyed to appellees, and that titles to those lands were quieted in the respective appellees. A decree was entered in accordance with the letter opinion on April 8, 2003. The decree consolidated appellant's foreclosure suit with appellees' quiet-title action. An amended decree was entered on April 22, 2003, correcting some of the property descriptions. Notice of appeal was timely filed on April 29, 2003.

Appellant raises four points for reversal: that the trial court erred in finding that the escrow contracts between Collister and appellees took precedence over appellant's mortgage, which had been foreclosed upon, without finding that appellant had committed fraud in obtaining the foreclosure decree; that the trial court erred in finding that appellant had a responsibility to make appellees parties to the original foreclosure action because appellant was seeking a foreclosure in the present action; that the trial court erred

in finding that Collister was not a necessary party to the present action and that appellees had a right to elect their remedy against appellant; and that the trial court erred in finding that appellees' escrow agreements to purchase property took precedence over an existing mortgage from Collister to appellant.

■ In reviewing a circuit court's exercise of its equity jurisdiction, we consider the evidence *de novo*, but we will not reverse a trial judge's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Ward v. Davis*, 298 Ark. 48, 765 S.W.2d 4 (1989). We give due deference to the superior position of the trial judge to view and judge the credibility of the witnesses. *Arkansas Presbytery v. Hudson*, 344 Ark. 332, 40 S.W.3d 301 (2001). A finding is clearly erroneous when, even though there is evidence to support it, the appellate court is left with the definite and firm conviction that a mistake has been made. *Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 994 S.W.2d 468 (1999).

■ Appellant first argues that the trial court erred in finding that the escrow contracts between Collister and appellees took precedence over appellant's mortgage, which had been foreclosed upon, without finding that appellant had committed fraud in obtaining the foreclosure decree. In other words, appellant is arguing that appellees must show fraud in order to set aside the foreclosure decree. We do not believe that rule has any application in the present case because appellees are not attempting to set aside the foreclosure decree. The 1995 foreclosure decree was not a final decree because it did not order a sale of the property. Rather, Collister was allowed time to account for any outstanding escrow contracts. *See Scherz v. Mundaca Inv. Corp.*, 318 Ark. 595, 886 S.W.2d 631 (1994) (holding that a foreclosure order that orders a sale of the property and places that order into execution without further judicial action is a final order). Appellees did not allege that appellant committed any fraud; rather, appellees allege that their escrow contracts had intervened between the time of the release of the 1982 mortgage and the recording of the 1987 and 1990 mortgages. The supreme court has specifically held that the purchaser of land subject to a mortgage is a necessary party to a suit seeking foreclosure of that mortgage. *First State Bank v. Cook*, 192 Ark. 213, 90 S.W.2d 510 (1936); *Clark v. Lesser*, 106 Ark. 207, 153 S.W. 112 (1913). Here, appellees purchased their lands subject to the 1982 mortgage. Their interests

were of record at the time of the 1994 foreclosure action. Because they were not named parties, appellees' interests in their lands were unaffected by the foreclosure decree. *Cook, supra; see also Maloy v. Stuttgart Mem'l Hosp.*, 316 Ark. 447, 872 S.W.2d 401 (1994) (holding that the general rule is that a non-party is not bound by a judgment). We affirm on this point.

■ In her second point, appellant argues that the trial court erred in finding that appellant had a responsibility to make appellees parties to the original foreclosure action because appellant was seeking a foreclosure in the present action. Without question, appellees claim an interest in the 204 acres covered by appellant's mortgage and complete relief for appellant regarding the mortgaged property cannot be accomplished without their joinder. As noted above, a purchaser of land subject to a mortgage is a necessary party to a suit seeking foreclosure of that mortgage. *First State Bank v. Cook, supra; Clark v. Lesser, supra.* Further, as noted in the fourth point, when Collister executed the escrow agreements and deeds, she lost the ability to grant a valid mortgage on the same property covered by the escrow agreements. The fact that appellant sought foreclosure in the present action is irrelevant because there was no mortgage covering appellees' lands for appellant to foreclose. We also do not see the prejudice to appellant from this ruling because the trial court consolidated the foreclosure case with the present case and provided that the foreclosure sale could proceed with respect to the remaining land covered by the 1987 and 1990 mortgages. We affirm on this point.

■ Appellant next argues that the trial court erred in finding that Collister was not a necessary party to the present action and that appellees had a right to elect their remedy against appellant. Both sides suggest that the other should have made Collister a party, but neither side wanted to take responsibility for bringing Collister into this action because of Collister's having filed for bankruptcy relief and obtaining a discharge. Appellant argues that her rights against Collister were decided in the bankruptcy. This same argument also answers appellant's argument because any breach of warranty on Collister's part occurred when Collister attempted to grant the second and third mortgages, which occurred prior to her filing bankruptcy. Collister testified that her bankruptcy petition listed potential claims against her but was uncertain if appellees' claims were included. Under the

bankruptcy code, 11 U.S.C. §§ 524, 727 (2000), any potential cause of action for breach of warranty against Collister for conduct occurring prior to the filing of the bankruptcy petition and listed in that petition was extinguished upon her discharge. *See Johnson v. Home State Bank,* 501 U.S. 78 (1991). Thus, making Collister a party to this action would not accomplish anything because her personal liability had been discharged in bankruptcy. We affirm on this point.

■■ For her fourth point, appellant argues that the trial court erred in finding that appellees' escrow agreements to purchase property took precedence over an existing mortgage from Collister to appellant. The real issue is the effect of appellees' escrow contracts when the 1982 mortgage was released and the 1987 and 1990 mortgages were recorded. Placing a deed in escrow that is accompanied by a contract of sale, both of which are recorded, withdraws the land from the market and renders the grantor powerless to encumber the land so far as the vendee is concerned. *Scott v. Stone,* 72 Kan. 545, 84 P. 117 (1906)[4]; 28 AM. JUR. 2D *Escrow* § 43 (2000). *See also Roach v. A.D. Malone Mercantile Co.,* 135 Ark. 69, 204 S.W. 971 (1918); *Fine v. Lasater,* 110 Ark. 425, 161 S.W. 1147 (1913). That is the situation here. Collister had no power to mortgage the lands to appellant that had been conveyed to the appellees. *See Fine, supra; Potlatch Corp. v. Triplett,* 70 Ark. App. 205, 16 S.W.3d 279 (2000). This is true even though no title passes until the condition — the payment for the land — has been performed, and not the date the escrow agreement was signed. *Arkansas Supply, Inc. v. Young,* 265 Ark. 281, 580 S.W.2d 174 (1979); *Mansfield Lumber Co. v. Gravette,* 177 Ark. 31, 5 S.W.2d 726 (1928); *White v. Cordes,* 14 Ark. App. 104, 685 S.W.2d 524 (1985). Appellees had all recorded their deeds prior to the 1994 foreclosure case, and none of the appellees were made parties to the foreclosure suit. This is also true due to the gap between the release of the 1982 mortgage and the execution of the 1987 mortgage.[5] Because they were not named parties, appellees' inter-

---

[4] This case is styled *Scott v. Sloan* in the Pacific Reporter.

[5] The 1982 mortgage was released on February 15, 1987, and the 1987 mortgage was executed on November 15, 1987. The release was recorded on November 23, 1987, at 11:30 a.m., and the 1987 mortgage was recorded on November 23, 1987, at 11:40 a.m.

ests in their lands were unaffected by the foreclosure decree. *First State Bank v. Cook, supra.* We affirm on this point.

Affirmed.

NEAL and CRABTREE, JJ., agree.