CARTER *v.* WALKER.

4-5909                                139 S. W. 2d 233

Opinion delivered April 22, 1940.

*W. T. Trice* and *Ed Trice,* for appellant.

*Ross Mathis* and *W. J. Dungan,* for appellee.

HOLT, J. Appellee brought suit against appellants in an effort to establish her claim to the estate of R. C. Carter, deceased.

She alleged in her complaint that about the year 1914 she, a widow, and R. C. Carter, who was an unmarried man, entered into an oral contract and agreement whereby they would pool their efforts in maintaining a home and engaging in business activities, she performing the services of a general housekeeper, and in every way to assist him in accumulating property; that in consideration for these services to be performed by her, it was mutually agreed that all accumulations of property which they might thus acquire should, at the death of either, go to the survivor.

She further alleged that Mr. Carter agreed to make a will by the terms of which he would carry out this agreement; that he did on August 11, 1928, execute a will under the terms of which he partially carried out their agreement; that in 1933, R. C. Carter executed another will in which he attempted to revoke the former will executed in 1928; that about two weeks prior to his death, R. C. Carter made her a valid gift of $8,000 evidenced by a certificate of deposit in the Bank of McCrory, Arkansas, and she prayed that ''the court admit to probate this instrument here offered as the last will and testament of R. C. Carter, dated August 11, 1928, and that

the court appoint proper person as administrator with will attached to administer said estate, and that the rights provided therein be preserved and proper distribution ultimately made; or if the court should find that said instrument does not constitute the last will and testament of R. C. Carter then the court specifically enforce the contract existing between this plaintiff and R. C. Carter, and that the entire estate be awarded to her.

"The plaintiff further prays that the court find and decree that she is the owner of the $8,000 on deposit in the Bank of McCrory, McCrory, Arkansas, by reason of a gift of said sum of money to this plaintiff by R. C. Carter on a date approximately two weeks prior to the death of R. C. Carter, and that the Bank of McCrory be ordered to pay said sum of money into the registry of this court, or pay same to this plaintiff.

"The plaintiff further prays that the court deny and refuse probate of the instrument offered for probate by the defendant, W. W. Carter, said instrument being dated the.........day of..............................., 1933, . . ."

Appellants denied all material allegations in the complaint and in addition pleaded the statute of frauds and the statute of limitations as a bar to any claim of appellee.

The learned chancellor after hearing testimony at great length made the following findings:

"That on September 22, 1939, after submission of the cause, W. W. Carter as executor of the estate of R. C. Carter filed his motion alleging plaintiff's election to take under the will of R. C. Carter and praying dismissal of this cause, and that on October 24, 1939, the day of the final hearing, the defendants filed a canceled check showing payment to Mrs. Eliza J. Walker of the sum of $500, by W. W. Carter, as executor, together with a stipulation that the canceled check may be placed in the record as a part of this stipulation, which motion is by the court denied and overruled. To which action of the court the defendants at the time object and save their exceptions.

"That the motion to exclude the depositions and testimony of Mrs. Eliza J. Walker, which motion was filed on September 11, 1939, should be and the same is denied. To which action of the court the defendants object and save their exceptions.

"That approximately twenty-five years before the death of R. C. Carter, in the month of January, 1914, the plaintiff, Mrs. Eliza J. Walker, and the deceased, R. C. Carter, by agreement entered into a joint enterprise for the raising of cattle, and shortly thereafter the said R. C. Carter made an oral agreement to bequeath and devise to the plaintiff sufficient property to compensate her at the time of his death for services rendered as a housekeeper and as a helper in his business affairs, including his subsequent farming operations.

"That on August 11, 1928, in an effort to comply with the agreement made many years before, the said R. C. Carter executed a last will and testament, with the formalities required by law, in which he gave, devised and bequeathed to the plaintiff the sum of $10,000, by which the said R. C. Carter recognized his obligation at the time to compensate the plaintiff according to the agreement first made in regard to the execution of a will in the amount of $10,000.

"That on October 28, 1933, the said R. C. Carter executed a last will and testament, with the formalities required by law, in which he devised and bequeathed small sums to certain members of his family, but in which he gave, bequeathed and devised substantially all of his estate to the defendant, W. W. Carter, with the exception of the sum of $500 bequeathed to the plaintiff.

"That after the agreement between the plaintiff and the said R. C. Carter, and also subsequently to the execution of the first will on August 11, 1928, the plaintiff fully complied with her agreement, performing all services she had agreed to perform as housekeeper and as helper of the said R. C. Carter in all of his business affairs to the time of his death.

"That on December 28, 1938, the said R. C. Carter gave and delivered as a gift *inter vivos* to the plaintiff a certificate of deposit in the Bank of McCrory, of McCrory, Arkansas, for the sum of $8,000, dated July 18, 1938, due six months after date, and bearing interest to maturity at the rate of two per cent. per annum, and that the gift of the certificate of deposit was intended as a partial satisfaction of the amount due from R. C. Carter to the plaintiff under his agreement to compensate her.

"That the bequest of $500 to the plaintiff in the will of R. C. Carter, executed on October 28, 1933, should also be applied upon the amount due from R. C. Carter to the plaintiff, and it was the intention of the testator to apply this sum upon the amount due the plaintiff.

"That the will executed on October 28, 1933, constituted a breach of the agreement of R. C. Carter to compensate the plaintiff in his will, and to the extent that it may be necessary, to carry out this decree, the last will should be canceled and a trust should be impressed upon the property owned by R. C. Carter, at the time of his death, the amount due the plaintiff after the payment of the certificate of deposit in the Bank of McCrory and the additional sum of $500 by W. W. Carter as executor, being $1,500."

He then entered the following decree:

"That the Bank of McCrory be and it is hereby ordered and directed to pay to the plaintiff, Mrs. Eliza J. Walker, the full amount due on the certificate of deposit issued to R. C. Carter on July 18, 1938, together with interest due on the same.

"That the amount of the certificate of deposit and the additional sum of $500 paid to the plaintiff by W. W. Carter as executor be credited upon the total sum due her as compensation in the amount of $10,000, leaving a balance of $1,500 still due the plaintiff and constituting a lien upon the property owned by R. C. Carter at the time of his death.

"That a trust be and the same is impressed upon all property, real and personal, owned by R. C. Carter at the time of his death, in favor of the plaintiff and in the amount of $1,500 and a lien is expressly declared to exist upon said property in favor of the plaintiff. For the satisfaction of the lien in the amount of $1,500 an execution shall issue out of this court against any property owned by R. C. Carter at the time of his death and now in the hands of his devisee, and also for all costs of this action."

Appellants have appealed from this decree and appellee has cross-appealed.

The record reflects that about the year 1914, appellee, Mrs. E. J. Walker, who was at the time a widow with three small children, assumed the same farm residence with R. C. Carter, deceased, who was unmarried. There is evidence that they continued to live in the same residence over a period of approximately 25 years and up until R. C. Carter died January 10, 1939. They were not married to each other. Appellee performed the usual duties of a housekeeper, helped with the stock, worked in the garden, and occasionally in the field, and was a faithful assistant to Mr. Carter over the long period of years during which they lived in the same house.

There is much testimony in this record on the contention of appellee that she should be awarded the entire estate left by R. C. Carter at his death under the oral agreement alleged in her complaint. In view of the conclusions we have reached, we deem it unnecessary to set out this testimony. Suffice it to say, that after a careful review of all the evidence, it is our view that it is not sufficient to establish the oral contract and agreement as claimed by appellee.

On August 11, 1928, R. C. Carter executed a will in due form in which he made provision for appellee, Mrs. Walker, in the following language: "After the payment of my funeral expenses and any other debts I may owe at the time of my death, I give, devise and bequeath

to Mrs. E. J. Walker the sum of $10,000 to be paid to her as soon after my death as may be practical. Mrs. Walker has been my faithful housekeeper for a number of years and her treatment and consideration of me at all times and especially during the years of my ill health warrants this bequest."

Subsequently, however, on October 28, 1933, Mr. Carter executed another will, in accordance with all statutory requirements revoking all former wills and in the sixth paragraph thereof made the following devise to appellee: "I give, devise and bequeath unto Mrs. E. J. Walker the sum of five hundred dollars, and direct that same be paid to her by my executor out of my personal estate." ·

On the death of Mr. Carter the will of 1933 was duly probated and appellee accepted the bequest of $500 made to her and it is our view that by this acceptance she is bound by the provisions of this will.

Before the solemn recitals of this instrument could be set aside in favor of the alleged oral contract, there must be testimony of a clear and convincing character upon which to base such action, and such testimony does not appear in this record.

It does not follow, however, that although R. C. Carter executed a valid will in 1933, he was thus precluded from disposing of his property by gift or in any manner that he might desire, subsequent thereto and during his lifetime.

The record reflects that about two weeks prior to Mr. Carter's death, in a room of the residence in which he and appellee were living, he delivered to appellee two papers, one in a green wrapper which was his will of 1928 and the other a certificate of deposit for $8,000 on the Bank of McCrory and written on white paper. It is appellee's contention that this was a binding gift *inter vivos* from the deceased, Carter, to her and that she is entitled to the proceeds of this certificate of deposit in the sum of $8,000. It is our view that this contention must be sustained.

While appellants earnestly insist that the testimony of appellee, herself, on this question of the gift of the certificate of deposit was incompetent and should not have been considered by the chancellor on account of the provisions of § 5154 of Pope's Digest, it is our view that assuming—without deciding—her evidence, in this regard, to be incompetent, yet we think there was other evidence and circumstances leading up to and surrounding this transaction sufficient to uphold the chancellor's decision in favor of appellee. At least we cannot say that his finding is against the preponderance.

It is practically undisputed that appellee worked faithfully and performed services for Mr. Carter over a period of 25 years and that he so recognized this and evidenced a desire not only in conversations with others than appellee, but in his will of 1928, to compensate her in a manner, and to the extent, that he thought she deserved. Here we refer to the provision of the 1928 will set out, *supra,* which, we think, is strong evidence of Mr. Carter's intent, and the amount to which he thought appellee entitled. At that time it was his desire that she receive $10,000. Later in 1933 in another will he cut her off with only $500. Some six years later, about two weeks before Mr. Carter died, and when his mind was normal, but while suffering from a disease of the body which eventually resulted in his death, in the presence and hearing of Mrs. Karl Walker, who was visiting at the home of deceased and appellee, the certificate of deposit, along with the 1928 will, were delivered to appellee.

Mrs. Karl Walker testified: "It was right after Christmas on a Wednesday about the 28th of December, 1938, in the bedroom of his home about two weeks before he died. There were two papers—one was a statement or draft for $8,000—showing he had this amount loaned to the McCrory Bank and the other was a will to Mrs. Eliza Walker for $10,000. He told her this was hers then because he was afraid that a Harrison Rayburn, his niece's fiance, would get some of his money and that

they would put Mrs. Walker out of the house without a penny to live on."

And on cross-examination she further testified: "The first paper was the will for $10,000 to Mrs. Walker —about the size of a marriage license or deed or any other legal document. The other was a draft or statement showing he had $8,000 loaned out to the McCrory Bank which was green and a little larger than a check. He told her this was due sometime in February, 1939. Mr. Carter took these two papers from a file on his stand in his bedroom and handed them to Mrs. Walker."

Dr. C. E. Dungan testified: "Q. Now without attempting to state the different times, which would probably be impossible, please state the conversations you had with Crit Carter, or Mr. R. C. Carter, in regard to the business transactions and business relations with Mrs. Walker, Dr. Dungan? A. Why, Mr. Carter has discussed his finances with me numbers of times. In fact, he has frequently shown me deposits and things like that. I remember one time he had dropped them on the floor and he had some deposits in Little Rock and I kidded him about it, and he said he always kept some money, and he said to me he was going to take care of Mrs. Walker, and that she would be provided for. He has frequently made the statement far enough to tell me that he had made a will to take care of her. . . . Q. Did he state any reason for his action in making the will or seeing that she was taken care of? A. He said that she was the best friend he had ever had; had done more for him than anybody and he felt like he owed it to her."

At the time of R. C. Carter's death, the 1928 will and the certificate of deposit in question were in the actual possession of appellee.

As to the requisites constituting a gift *inter vivos*, this court in the well-considered case of *Lowe* v. *Hart*, 93 Ark. 548, 125 S. W. 1030, held: "To constitute a valid gift *inter vivos*, the donor must have been of sound mind, must have actually delivered the property to the donee, and must have intended to pass title immediately, and the donee must have accepted the gift."

We think these requirements have been met by a preponderance of the evidence in this case, and that a valid gift to appellee was made.

While it is conceded that Mr. Carter did not indorse the certificate of deposit at the time he delivered it to appellee, we do not think this necessary for a valid gift. In *Lowe* v. *Hart, supra,* where the facts are quite similar to those in the instant case, and where it does not appear that the certificate of deposit in question was indorsed at the time of its delivery (In fact an examination of the record discloses that it was conceded that the certificate of deposit was not indorsed), this court said:

"Now, if Carroll intended at the time he handed the certificate to Mrs. Hart to pass immediately to her the title and the right to draw his money on deposit, as the above evidence tends to show, and if she accepted it as her own, then the intention on his part to give, and on her part to accept, accompanied by delivery of the certificate for the purpose indicated, would constitute an absolute gift *inter vivos.*"

As heretofore indicated, we hold that the gift was valid and must be sustained.

On the whole case, the result of our views is that the decree of the chancellor awarding to appellee $500 under the will of 1933 and the proceeds of the certificate of deposit in the Bank of McCrory, of McCrory, Arkansas, for $8,000, or a total of $8,500 is sustained, and to that extent affirmed.

That part of the decree, however, awarding to appellee $1,500 as due her under the alleged oral contract and declaring the same to be a lien upon the property of R. C. Carter at the time of his death, is reversed with directions to dismiss for want of equity.

On cross-appeal the decree is affirmed.

The costs of this appeal to be shared equally by the parties.