HUNTER *v.* HUNTER.

4-9014                                          224 S. W. 2d 804

Opinion delivered December 5, 1949.

*W. J. Morrow* and *D. B. Bartlett,* for appellant.

*J. J. Montgomery* and *J. H. Brock,* for appellee.

MINOR W. MILLWEE, Justice. This is a controversy between a father and his two sons. Appellee, Pat E. Hunter, brought suit against appellants, Theron Hunter and Fred Hunter, to cancel two deeds executed to appellants by Earl Hyden and wife, purporting to convey a tract of land in Johnson county containing 120 acres. This appeal is from a decree granting the relief prayed.

Appellants have not properly abstracted the pleadings and exhibits. From the abstract furnished by appellee and the testimony adduced at the trial, the following facts appear. Appellee was engaged in the mercantile business at Coal Hill, Arkansas, under the name of Hunter Trading Company for several years prior to 1944. Wyatt West owned 120 acres of land when he died intestate in 1936 indebted to appellee on a store account in the sum of $792.42. At the time of his death, West was also indebted to G. W. Elkins, another merchant at Coal Hill, in the sum of $472.50. The Elkins indebtedness had been reduced to judgment prior to West's death and Elkins assigned the judgment to appellee in September, 1936.

Appellee was appointed administrator of West's estate and the 120-acre tract of land belonging to said estate was sold by order of the probate court in satisfaction of the two claims held by appellee. Earl Hyden, a clerk in appellee's store, became the purchaser at the administrator's sale held in December, 1936. Appellee, as administrator, executed a deed to Hyden and Hyden and wife in turn executed a deed to appellants, Theron Hunter and Fred Hunter on January 1, 1937. The purchase by Hyden at the administrator's sale and the execution of the deed to appellants were at the instance and under the direction of appellee. Hyden paid nothing for the land and the consideration for the sale was the amount of the indebtedness from the West estate

to appellee. The deed to appellants of January 1, 1937, was delivered by Hyden to appellee who put it away with other private papers where it was found by his wife when appellee became seriously ill in 1944. The deed was never recorded. Appellants were non-residents of Arkansas at the time and apparently knew nothing about the execution of the deed until some time in 1944.

On November 7, 1944, Earl Hyden and wife executed and delivered a quitclaim deed conveying the lands to appellee and this deed was duly recorded. On December 20, 1946, Earl Hyden and wife executed a second quitclaim deed of the land to appellants, Theron Hunter and Fred Hunter, the instrument reciting that it was given to correct the deed of November 7, 1944. Appellee remained in possession of and paid taxes on the land until a receiver was appointed in another suit sometime after 1944.

The chancellor made special findings including the following: "Though there has been no pleading or evidence challenging the validity of the probate sale of these lands for the purpose of paying the debts of the estate of Wyatt West, the court assumes that the object of Pat E. Hunter, the administrator, in having Earl Hyden bid it in at the sale and then execute a deed to his two sons, was because of the prohibition of the statute of him as administrator being interested in its purchase. . . .

"The undisputed evidence is that Pat E. Hunter accomplished a sale of the land to satisfy a debt due himself, and that these sons did not pay any part of the consideration or costs or pay any taxes, all of these having been paid by Pat E. Hunter, who held the possession of the land until the appointment of a receiver. Earl Hyden never had any interest in the land except a bare legal title, the equitable ownership being in Pat E. Hunter who used him only to accomplish whatever object he had in view, and his retention of the deed that he had Earl Hyden to execute was just as effective as if he had destroyed it, and had Earl execute a deed direct to

him, and until he delivered the deed to his sons and they accepted it, no title passed to them.''

The court then held that the deeds to appellants dated January 1, 1937, and December 20, 1946, should be cancelled as a cloud upon appellee's title and a decree was entered accordingly.

We think the preponderance of the evidence supports the conclusion reached by the trial court. We hasten to observe, as did the chancellor, that the validity of the 1936 probate sale of the land is in no manner challenged by the parties to the instant suit. It is clear that appellee furnished the consideration for the purchase of the land at the administrator's sale in December, 1936, and that Earl Hyden was only a nominal purchaser who acted throughout the proceedings as the agent of his employer. Hyden furnished no money and had no interest in the transaction except to do the bidding of appellee. Appellee retained possession of the land and the unrecorded deed to appellants, and the evidence is insufficient to show his intention to effect, or appellants' intention to accept, a delivery of the deed.

Appellant, Fred Hunter, filed no answer to the complaint of appellee. In a separate answer filed by Theron Hunter he alleged that he and his brother became the owners of the land under the deed of January 1, 1937; that after he learned that said deed had not been placed of record, he had Earl Hyden execute the deed of November 7, 1944, and that the scrivener by mistake made the deed to Pat E. Hunter instead of Pat T. Hunter, the name of Theron Hunter. He also alleged that the deed of December 20, 1946, was executed to correct this mistake. Theron Hunter, who still resides in California, did not testify and the proof is insufficient to sustain the allegations of his answer; nor is there any explanation as to why he would have the deed of Nov. 7, 1944, made to himself when he was contending that he and his brother were joint owners of the land.

This court has held that there is no delivery of a deed unless what is said and done by the grantor and

grantee manifests their intention that the instrument shall at once become operative to pass the title to the land conveyed and that the grantor shall lose dominion over the deed. *Maxwell* v. *Maxwell*, 98 Ark. 466, 136 S. W. 172; *Van Huss* v. *Wooten*, 208 Ark. 332, 186 S. W. 2d 174. In *Bray* v. *Bray*, 132 Ark. 438, 201 S. W. 281, the court said: "We have said that the question of delivery is generally one of intention as manifested by acts or words, and that there is no delivery unless there is an intention on the part of both of the actors in the transaction to deliver the deed in order to pass the title immediately to the land conveyed, and that the grantor shall lose dominion over the deed." See, also, *Woodruff* v. *Miller*, 212 Ark. 191, 205 S. W. 2d 181.

It is also the general rule that where there is an agreement or agency to purchase land for another and the principal furnishes the consideration for the conveyance which the agent takes in his own name, a resulting trust arises in favor of the principal. *Home Land & Loan Co.* v. *Routh*, 123 Ark. 360, 185 S. W. 467, Ann. Cas. 1917C 1142; 54 Am. Jur., Trusts, § 212. Although the nominal grantor, Earl Hyden, apparently lost dominion over the deed, it was turned over to appellee, his principal, who retained the instrument without the manifestation of an intent that the deed should become operative to pass title to the appellants.

Insofar as the rights of the parties to the instant suit are concerned, we conclude that the legal effect of the transactions affecting the deed to appellants of January 1, 1937, is the same as though appellee himself had executed the deed direct to appellants and retained it without delivery. Since the preponderance of the evidence warrants the conclusion that the deed was void for want of delivery, the deed from Earl Hyden and wife to appellee dated November 7, 1944, vested title to the land in appellee as against the claims of appellants.

It follows that the trial court correctly cancelled the deeds to appellants dated January 1, 1937, and December 20, 1946, and the decree is accordingly affirmed.