TUCKER *v.* PEACOCK.

4-9029                                                227 S. W. 2d 929

Opinion delivered February 13, 1950.

Rehearing denied April 10, 1950.

O. E. Gates and *Wilson, Kimpel & Nobles,* for appellant.

C. T. Sims, James A. Ross and *Ovid T. Switzer,* for appellee.

HOLT, J.   This litigation involves the title and ownership of seventy-four acres of land in Drew County and a bank deposit of $960.21.

Appellant, Mrs. Lila Tucker, was a niece of D. C. Peacock, who died intestate, without issue, February 2, 1947. He had never married. His brother, Luther Peacock, was appointed administrator of his estate.

The appellees are Luther M. and E. M. Peacock, Jr., brothers of D. C. Peacock, together with the heirs of Mae Peacock Johnson, a deceased sister of D. C. Peacock. D. C., Luther, E. M. Jr., and Mae Peacock (Johnson) were born of the marriage of Dr. E. M. Peacock and Lucy L. Peacock.

The land here was acquired by deed by Dr. Peacock in 1887 and, at the time of purchase, he and his wife executed a mortgage on the land to Dallas Miles. About 1901, Dr. Peacock deserted and abandoned his wife and his four children, all minors, and has not been heard from since. The mortgage to Miles was foreclosed and sale was had January 11, 1902. Mrs. Miles purchased and conveyed to J. M. Hoover, who in turn executed to Mrs. Lucy Peacock, the mother of the minor children, bond for title, agreeing that she might purchase this land on payment of approximately $199.40, plus interest and costs, within a period of four years. With the aid of her children, Mrs. Peacock purchased and received a deed from Hoover. Mrs. Peacock and her children, including D. C. Peacock, continued to live on the land until January, 1930, when Mrs. Peacock died. Thereafter, D. C. Peacock continued to occupy the property until he died suddenly February 2, 1947. At his death, D. C. Peacock left a bank account of $960.21. He had received a deed to this tract of land from his mother December 18, 1928.

The present suit was brought by appellant to enforce specific performance of an alleged oral contract between her and D. C. Peacock, (quoting from appellant's brief) "by which and under which she was placed in possession of the lands and personal property of D. C. Peacock, with the specific understanding and agreement that upon the death of D. C. Peacock, title to the real estate would vest fee simple title in Mrs. Lila Tucker, and that any and all personal property owned by him at the time of his death, would become the absolute property of Mrs. Lila Tucker."

Appellees answered with a general denial.

Following a patient and extended hearing, the trial court found that appellant was entitled, under an oral contract with her uncle, D. C. Peacock, to one-fourth of the land here involved and to one-fourth of $350 worth of timber sold from the land by D. C. Peacock and which he had deposited in the above bank account. A decree was entered in accordance therewith.

On direct appeal, appellant contends that the court erred in refusing to award her all of the land involved here, together with the bank account, and on cross-appeal, appellees earnestly argue that appellant failed to establish, by the necessary proof, the oral contract in question, and was therefore not entitled to any interest whatever in the seventy-four acres of land or to any part of the bank account, and that the court erred in holding otherwise.

We have reached the conclusion, after reviewing the testimony, that appellees' contention on their cross-appeal must be sustained. It therefore becomes unnecessary for us to determine other questions presented.

The rule is well established, and many times announced by this court, that in order for appellant to establish title and ownership of the land involved here, and the value of the timber removed by D. C. Peacock on an oral contract, the burden was on her to establish execution of that contract by a higher degree of proof than a preponderance of the testimony. She was required to show its execution by clear, cogent, and decisive testimony. It must be so strong as to be substantially beyond reasonable doubt. We hold she has failed to meet this burden. See *Walk* v. *Barrett,* 177 Ark. 265, 6 S. W. 2d 310, and cases there cited.

The evidence is voluminous and some of it conflicting.

Appellant, in effect, testified that her uncle, D. C. Peacock, orally agreed with her that if she would move on the land in question, keep house for him, do his cooking, washing and ironing, and tend to his personal needs, the

seventy-four acre tract and all his personal property would become hers at his death.

A witness, Edgar Burks, testified that on one occasion he heard D. C. Peacock make a proposition to appellant, his niece, that if she would move back to his home, "do his washing, ironing, and cook him three hot meals a day, he would give her everything he had," and also said: "That is all I ask you to do for me," that he was not going to batch.

Appellant's husband, Vance Tucker, (who subsequent to 1937 had served a penitentiary term for theft of hogs) testified that he was present and heard the above conversation between his wife and her uncle, D. C. Peacock. No one else was present. There was other evidence tending to corroborate the above testimony.

On behalf of appellees, there was evidence that shortly after the death of D. C. Peacock, his brothers, Luther and Erastus, together with some of the children of Mae Peacock Johnson, visited appellant, Lila Tucker, and her husband, and walked over the land. On that occasion, appellant's husband, Vance, inquired as to the value of the land and said he would pay $2,500 for it. Also, appellant, Lila Tucker, asked Luther Peacock (her uncle and administrator) to buy the property in and let her and Vance have it. Luther made no promise. Thereafter, Lila Tucker wrote Luther Peacock a letter in which she attempted to make arrangements to rent the place for the year 1947.

Witness, Henry Lytle, testified that some time in 1942, he heard a conversation between Erastus and his brother, D. C., in which D. C. asked Erastus why he did not move on the old place (the seventy-four acres involved here) with him and do the cooking, and that D. C. Peacock told Erastus at that time, "if it (the home place) is ever sold, you know your part of it is there and if you outlive me you know you and the other heirs will get it * * *." Witness further testified that in 1946 he heard Erastus Peacock say to his brother, D. C. Peacock, "Carl, that timber you sold, did you ever divide the timber money

with Luther and the other boys, I have not seen any of it? D. C. said, 'that money is in the bank, every dime of it. We are going to have to do some fencing and it is the duty of Luther and the Johnson boys and you to help pay the expenses and that money is going to be paid on the building of the fences and repairs.' '' This witness also heard Vance Tucker say: ''Well, it's here (the land) for them now, I am going to turn it over to them.''

E. H. Lytle, a neighbor of D. C. Peacock during his lifetime, heard D. C. tell his brother, Erastus, (while at witness' house) : ''Erastus, I am getting old and you will be old some day and neither of us have any family. If I die before any of you did, it will go to you and Luther and my sister's children,'' and about two years later, witness heard D. C. say to Erastus: ''It's there, if you want your part, come on up and live with me, but I would rather not tear it up and sell it. You want a home and I want a home and neither of us have a family.''

J. V. Hayes, an 84-year-old brother of Mrs. Lucy Peacock, testified that he had lived near the old Peacock home for many years and that D. C. Peacock, shortly before his death, said in his presence to witness' wife, Dora Hayes: ''Aunt Dora, I ain't satisfied and I just came to see you and Uncle Vol. I ain't satisfied. I ain't treated right in my own home. * * * I am a good mind to sell the old place and give the rest of the heirs their part and go live with Luther or go to McGehee, I have money enough to live on and pay for a little place without selling the old place, but I will sell it and wipe things out up there if I can. I was thinking about making a will, but I could not do that, because the old place does not belong to me any more than the other heirs, and I am going to leave it if I can't sell it, I am going to leave it.''

We do not detail all the testimony. It suffices to say that when all of the evidence presented is measured and considered in the light of the above rule, we hold that it falls far short of establishing the oral contract between appellant and D. C. Peacock, in question. As indicated, while the evidence is somewhat conflicting, however, of

strong significance is the fact that appellant's husband, Vance Tucker, after the death of D. C. Peacock, tried to buy the land from appellees, and the further fact that his wife tried to induce Luther, as administrator, to bid the property in (in case of a sale) and let them acquire it, and in addition, she also wrote a letter to the administrator requesting that she be permitted to rent the property for the year 1947, all of which strongly tends to contradict her claim of ownership and that a valid oral contract had been entered into between her and her uncle.

As to the remainder of the bank account, but little need be said. As we read the record, it supports the trial court's finding and decree to the effect that there was no evidence introduced showing a delivery of the bank account to appellant. The decree recites: "At the time of the death of D. C. Peacock, he had on deposit to his credit and in his name the sum of $960.21 in the Commercial Loan & Trust Company, a bank of Monticello, Arkansas, and plaintiff alleges that said deposit vested in her upon the death of D. C. Peacock under the terms of the oral contract, giving his property to her. But the Court finds that no evidence was introduced showing that a delivery of said deposit had been made by the deceased to the plaintiff, by muniments of title, or otherwise during his lifetime, and the title to said deposit did not pass or vest in the plaintiff, but is a part of the assets of the Estate of D. C. Peacock in the hands of the Administrator."

In *Stifft* v. *W. B. Worthen Company*, 176 Ark. 585, 3 S. W. 2d 316, this court said: "The elements necessary to constitute a valid gift *inter vivos* were stated by this court in *Lowe* v. *Hart*, 93 Ark. 548, 125 S. W. 1030, to the effect that the donor must be of sound mind, must actually deliver the property to the donee, must intend to pass the title immediately, and the donee must accept the gift."

Accordingly, the decree is affirmed on direct appeal. On cross-appeal, the decree is reversed and the cause remanded with directions to dismiss appellant's complaint for want of equity.