SMITH *v.* VAN DUSEN, ADM'X.

5-2682                                     357 S. W. 2d 22

Opinion delivered May 14, 1962.

*William C. Gilliam,* for appellant.

*Joe W. McCoy* and *Cole & Scott,* for appellee.

NEILL BOHLINGER, Associate Justice.   Parties to this lawsuit reside in Hot Spring County.  Roy M. Van Dusen died intestate suddenly on December 2, 1959.

For some years prior to his death it appears that Roy M. Van Dusen had enjoyed a close relationship, almost that of a congenial family, with Hester H. Smith and her sisters, Lewis Cooper Smith, Lethe E. Smith, Sherwood D. Smith, and her brother, Joe C. Smith.  It further appears that Roy M. Van Dusen, over the years, had taken most of his meals with the Smith family and kept some of his important papers at their house.

On January 12, 1959, Roy Van Dusen borrowed $2,300.00 from Hester Smith and executed his note for that amount due and payable in one year with interest. On April 24, 1959, Van Dusen, doing business as the Ouachita Company, borrowed $700.00 from Hester Smith for which he executed his note payable in six months with interest.  On June 30, 1959, Van Dusen, d/b/a the Ouachita Company, borrowed $4,500.00 from Joe Smith and executed his note therefor payable in one year with interest.

Van Dusen was the owner of lands in Ouachita and Hot Spring Counties and on February 13, 1959, Van Dusen executed two warranty deeds to part of his lands, the deeds purporting to convey title to Hester H. Smith. On June 30, 1959, the date on which Van Dusen borrowed $4,500.00 from Joe Smith, he executed to Hester Smith and Joe Smith his warranty deed conveying the Ouachita County lands. Joe Smith died August 4, 1959, and his will was duly probated and under that will Hester Smith was named as executrix.  The will left the entire estate of Joe C. Smith to his sisters named above.

Within days after the death of Roy M. Van Dusen on December 2, 1959, Hester Smith filed the two deeds to the Ouachita lands for record and on December 8, 1959, she filed in the office of the recorder of Hot Spring County the deed which conveyed Van Dusen's Hot Spring County land to Hester Smith.

On March 28, 1960, Hester Smith, as executrix of the estate of Joe Smith, filed her inventory of the lands of the Joe C. Smith estate, which inventory did not list any of the lands described in the deed to Joe Smith by Van Dusen and thereafter, on May 11, 1960, Hester Smith, individually and as executrix of the Joe C. Smith estate, filed claims against the Roy M. Van Dusen estate on the notes executed by Van Dusen as above described. These claims were allowed and paid.

Lillian M. Van Dusen, as administratrix of the estate of Roy M. Van Dusen, applied for and obtained permission of the Hot Spring Probate Court to employ counsel to recover the lands covered by the deeds executed by Van Dusen to Hester Smith and Joe Smith. Some reference is made to the fact that in two of the deeds from Van Dusen to Hester Smith the name of Hester Smith as grantee appears to have been typed in by a typewriter other than the one used in the preparation of the deeds. We do not find it necessary to pursue that matter further.

The main question on which this case turns is: Was there such delivery of the deeds as would vest title in Hester H. and Joe C. Smith? The fact that one of the deeds was executed- on the very day that Van Dusen borrowed $4,500.00 from Joe C. Smith might lend credence to the theory that the deed was intended as an equitable mortgage. That fact, however, is without weight here because the proof shows that Hester Smith filed claims against the Van Dusen estate for all sums of money which Van Dusen had borrowed from the Smith family and those claims were paid in full.

Did the execution and delivery of the deeds from Van Dusen to Hester H. Smith and Joe C. Smith constitute a gift *inter vivos*? To constitute a valid gift *inter vivos* the donor must have been of sound mind, must have actually delivered the property to the donee and must have intended to pass the title immediately and the donee must have accepted the gift. *Neal* v. *Neal*, 194 Ark. 226, 106 S. W. 2d 595; *Elrod* v. *Broom*, 214 Ark. 548, 217 S. W. 2d 246; *Carter* v. *Walker*, 200

Ark. 465, 139 S. W. 2d 233; *Krickerberg* v. *Hoff,* 201 Ark. 63, 143 S. W. 2d 560; *Bennett* v. *Miles,* 212 Ark. 273, 205 S. W. 2d 451; *Tucker* v. *Peacock,* 216 Ark. 598, 227 S. W. 2d 929.

In *Hunter* v. *Hunter,* 216 Ark. 237, 224 S. W. 2d 804, it was said:

"This court has held that there is no delivery of a deed unless what is said and done by the grantor and grantee manifests their intention that the instrument shall at once become operative to pass the title to the land conveyed and that the grantor shall lose dominion over the deed. *Maxwell* v. *Maxwell,* 98 Ark. 466, 136 S. W. 172; *Van Huss* v. *Wooten,* 208 Ark. 332, 186 S. W. 2d 174."

In the case of *Cavett* v. *Pettigrew,* 182 Ark. 806, 32 S. W. 2d 808, this court quoted the case of *Battle* v. *Anders,* 100 Ark. 427, 140 S. W. 593, as follows:

"The important question in determining whether there has been a delivery is the intent of the grantor that the instrument should pass out of his control and operate as a conveyance. The intent of the grantor is to be inferred from all the facts and circumstances adduced in the evidence. His acts and conduct are to be regarded in ascertaining his intent."

In the case of *Bray* v. *Bray,* 132 Ark. 438, 201 S. W. 281, Chief Justice McCulloch, speaking for the court, succinctly stated the law as follows:

"* * * We have said that the question of delivery is generally one of intention as manifested by acts or words, and that there is *no delivery unless there is an intention on the part of both of the actors in the transaction to deliver the deed in order to pass the title immediately to the land conveyed,* and that the grantor shall lose dominion over the deed. *Cribbs* v. *Walker,* 74 Ark. 104; *Maxwell* v. *Maxwell,* 98 Ark. 466; *Battle* v. *Anders,* 100 Ark. 427." [Emphasis supplied]

The facts in this case do not reflect that it was the intention to pass title immediately. There was a manual

delivery of the deeds but thereafter Van Dusen continued to occupy the lands, build roads, sell timber therefrom and exercise all the other prerogatives of an unlimited ownership, including the payment of the taxes. Highlighting the intention of the parties to this transaction, there is the testimony of the appellant, Hester H. Smith, which is as follows:

"Q.  Isn't it a fact Mrs. [sic] Smith that all the time or from the time you first came in possession of those deeds that you knew Roy Van Dusen had a right to go on that land and cut trees and build roads on it without your permission?

A.  Yes, he did.

\*  \*  \*

Q.  He exercised all rights on that land until he died?

A.  Yes.

Q.  You never did take possession of it?

A.  No.

Q.  You mean he had possession of it for his life time?

A.  Yes.

Q.  You mean that deed was to take effect at his death?

A.  Yes."

Viewing all of the facts in the light of the pronouncement in the *Bray* case cited *supra* we have here an instance in which "one of the actors of the transaction" states positively that there was no intention to pass title immediately to the land conveyed. The manual transfer of the deed itself is not sufficient. The intention to transfer title immediately must be present in both of the parties to the transaction, not just one of them but both of them, and here one of the parties who in testifying against interest stated that the intention to immediately vest title was not present.

It is noted that this action was commenced by Lillian Van Dusen as administratrix of the estate of Roy M. Van Dusen, deceased. In the recent case of *Calmese* v. *Weinstein,* opinion delivered November 27, 1961, Law Rep. 234, No. 6, [234 Ark. 237], we cited the case of *Dean* v. *Brown,* 216 Ark. 761, 227 S. W. 2d 623:

"Our statute provides that *immediately upon the intestate's death, the title to real estate descends to the heirs at law, subject to the widow's dower and the payment of debts.* See § 61-101 Ark. Stats. 1947. The two sections (§ 62-411 and § 62-911, Ark. Stats. 1947), concerning lands as assets in the hands of the administrator, have been uniformly construed to mean that the title to the lands passes direct to the heirs on the death of the intestate, subject to the rights of the administrator to have the Probate Court sell the lands if such be necessary to pay the debts of the deceased. [Footnote and citations omitted. Emphasis added.]"

This is in line with our uniform holdings on the relationship of the administratrix to the lands of the intestate. Our findings in that particular have no bearing here because the probate court had directed the administratrix to bring the action. We do know there were debts against the estate and it is possible that the probate court viewed the lands as being perhaps necessary for the payment of debts.

The chancellor found that there was no delivery that would vest title and in that he was correct. We agree with his conclusion and affirm this case.