Lem C. BRYAN, Receiver for Savings Guaranty Corporation, Appellant,

v.

Leslie D. HUMPHREY and Rose M. Humphrey, His Wife, Appellees.

No. 20591.

United States Court of Appeals, Eighth Circuit.

May 26, 1971.

William B. Putman, Fayetteville, Ark., John H. Fitzhugh, Fort Smith, Ark., for Lem C. Bryan, receiver, appellant.

Sam Sexton, Jr., Fort Smith, Ark., for appellees.

Before JOHNSEN, VOGEL and ROSS, Circuit Judges.

VOGEL, Circuit Judge.

Lem C. Bryan, plaintiff-appellant, acting as receiver for Savings Guaranty Corporation, brought this action against Leslie D. Humphrey and Rose M. Humphrey, his wife, defendants-appellees, on a promissory note and a mortgage on certain real property owned by the defendants who had executed the note and mortgage to the Arkansas Loan & Thrift Corporation, which corporation assigned the note and mortgage to Savings Guaranty Corporation. (Arkansas Loan & Thrift Corporation is also in receivership with Bryan as the receiver.)

Defendants counterclaim that Rose Humphrey is entitled to a set-off against the mortgage indebtedness. Their contention is that Mrs. Bertha Humphrey, mother of Leslie D. Humphrey, gave to Rose an Arkansas Loan investment thrift account, the funds of which should now be used to reduce the amount of the indebtedness. Plaintiff argues that no gift was made and that Leslie as Bertha's only heir owned the account. As an officer and director of Arkansas Loan Leslie was bound by a court order that directors could receive no payments on thrift accounts owned by them until all other creditors were paid in full. Thus, plaintiffs conclude that the funds in the thrift account are not available for use as a set-off. The District Court ruled that Bertha had made a gift of the account to Rose and allowed the set-off against the note. We affirm.

The law of the State of Arkansas is, of course, controlling. The question presented is whether or not Bertha made a valid inter vivos gift of her thrift account to Rose some months before her death.

The evidence at trial revealed that Bertha Humphrey had created the account entirely with her own money. Being aged and infirm with arthritis, she included Leslie's name (her only child) on the account in order that he could manage it for her. Sometime in January 1967 Bertha gave her loan receipt passbook to Rose with the intention that Rose and Rose's daughter, Martha J. Cravens, insert their names as payees of the account. Leslie arranged to have the names changed, which was accomplished. Leslie's name remained on the account so that he could manage it but the undisputed testimony at the trial was that he never owned or claimed a present ownership interest in the funds. Bertha died June 7, 1967. At all times any deposits made to the account by persons other than Bertha were repayments of loans made by Bertha to various members of her family.

The Supreme Court of Arkansas stated, in Baugh v. Howze, 1947, 211 Ark. 222, 199 S.W.2d 940, 941:

> "To constitute a valid gift inter vivos certain essential elements must be present, these include actual delivery of the subject matter of the gift to the donee or to some one as agent or trustee for the donee, with a clear intent to make an immediate present and final gift beyond recall, and at the same time unconditionally releasing all future dominion and control by the donor over the property so delivered."

As to the issue of whether or not the transfer of the thrift receipt or passbook from Bertha to Rose affected the ownership interests in the account, Hobbs v. Collins, 1962, 234 Ark. 779, 354 S.W.2d 551, is instructive as it involves facts analogous to those with which we are here concerned. In *Hobbs*, the Ar-

kansas court said, at page 553 of 354 S.W.2d:

"In the case at bar, the great preponderance of the evidence is that Gayler gave the money in the savings deposits, represented by the bank books, to Mrs. Preston for Winnifred. In Carter v. Walker, 200 Ark. 465, 139 S.W.2d 233, the Court quoted from Lowe v. Hart, 93 Ark. 548, 125 S.W. 1030, as follows: 'To constitute a valid gift *inter vivos* the doner [sic] must have been of sound mind, must have actually delivered the property to the donee, and must have intended to pass title immediately, and the donee must have accepted the gift.' In Williams v. Smith, 66 Ark. 299, 50 S.W. 513, the Court said: ' "If the gift be intended *in presenti,* and be accompanied with such delivery as the nature of the property will admit, and the circumstances and situation of the parties render reasonably possible, it operates at once, and, as between the parties, becomes irrevocable." * * *' In McCoy's Administrator v. McCoy, 126 Ky. 783, 104 S.W. 1031, the Court said: '*The authorities hold, almost without exception, that the delivery of a pass or deposit book in a savings bank transfers the money on deposit to the donee.*' Citing numerous cases. To the same effect are the cases of Goodson v. Liles, 209 Ala. 335, 96 So. 262, Brodrick v. O'Connor, 271 Mass. 240, 171 N.E. 479, and Dellepaine v. Hynes, 83 Cal.App. 604, 257 P. 180." (Emphasis supplied.)

Plaintiff's authorities are distinguishable; they involve situations where the claimant failed to demonstrate the present donative intent of the donor. Here there is no evidence contrary to defendants' position that Bertha possessed the requisite intent. We find the trial court acted in accord with the rules of law set out above in holding that a gift inter vivos was made by Bertha to Rose prior to her death, that Rose accepted it, that she then kept the passbook in her personal possession all of the time subsequent thereto,[1] and that proper notice of the change of ownership was given to the Arkansas Loan & Thrift Corporation. We cannot say that the underlying findings of fact were clearly erroneous.

We do modify the judgment appealed from in one respect by reducing the amount of the set-off from $11,504.43 as allowed by the District Court to $10,885.94. An audit of the account proved the $11,504.43 amount to be in error. The audit revealed that clerical errors had caused $135.50 to be improperly credited to the account, a $500.00 draft had been paid to Rose but not deducted from the account, and $17.01 should have been added to the account. With these adjustments, the balance read $10,885.94. In fact, the defendants' first counterclaim asked for a $10,885.94 set-off. There is no evidence that Rose is entitled to anything more.

We accordingly modify the judgment by showing the set-off figure to be correct at $10,885.94, and as so modified the judgment is in all things affirmed.

---

1. Since only Rose was given the bankbook and she kept it in her possession at all times, and since the pleadings in the case were amended to allege that only Rose was the owner of the account, we perceive no difficulty in the fact that the record does not show that Martha had overtly agreed to the use of the funds as a set-off. Any one of the joint owners was allowed to use the funds.