Cite as 2025 Ark. App. 130

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-23-666

|  |  |
|---|---|
|  | Opinion Delivered February 26, 2025 |
| JOAN FOSTER AND BRYANT FORD<br>APPELLANTS | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30CV-22-221] |
| V. |  |
|  | HONORABLE STEPHEN L. SHIRRON, JUDGE |
| ANDREA FORD, INDIVIDUALLY; AND ANDREA FORD AS THE ADMINSTATRIX OF THE ESTATE OF GENTRY FORD, DECEASED<br>APPELLEES | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellants Joan Foster (Joan) and Bryant Ford (Bryant) appeal after the Hot Spring County Circuit Court filed an order granting summary judgment and denying appellants' verified petition for quiet title in favor of appellees Andrea Ford, individually (Andrea); and Andrea Ford as administratrix of the estate of Gentry Len Ford, deceased (the Estate). On appeal, appellants generally argue that the circuit court erred in granting appellees summary judgment because genuine issues of material fact remained regarding the nature of the March 15, 2022, deed. We disagree and affirm.

I. *Relevant Facts*

The relevant facts are gleaned from the pleadings and affidavits attached to the opposing motions for summary judgment and responses thereto as further explained below.[1]

Joan Foster has two sons, Gentry and Bryant. Gentry was previously married to Tesa (now) Naylor. Gentry and Tesa have two daughters, Lensey and Laney. Gentry and Tesa owned the subject property,[2] and Gentry had built a cabin on the property. Gentry and Tesa obtained a divorce, and a continuing dispute arose concerning the subject property. Tesa married Cory Naylor, and Gentry married Andrea in 2010. To resolve the continuing dispute over the subject property, on December 31, 2012, Gentry and Andrea and Tesa and Cory conveyed the subject property to Gentry's mother, Joan, to hold it for Lensey and Laney.

According to appellees' unrefuted affidavits, the title to the subject property remained in Joan's name for the next ten years. However, despite the property remaining in Joan's name, the entire family, including Joan, referred to the property as "Gentry's." Gentry and Andrea maintained the subject property and paid the utility bills, and Gentry gave Joan the money to pay the county property taxes. Gentry and Andrea improved the property and

---

[1]In appellees' response to appellants' motion for summary judgment, they filed four affidavits. One affidavit was from Andrea, two affidavits were from Lensey and Laney Ford, and one affidavit from Tesa Naylor. Appellants did not file any opposing affidavits in their motion or in their reply.

[2]The subject property includes four tracts located in Hot Spring County, Arkansas.

subsequently placed the cabin for rent on Airbnb, VRBO, and Flipkey. The rental income from the cabin was the primary source of income for Gentry and Andrea.

Ten years later in early 2022, Gentry and Andrea decided to sell both their residence at another location in Hot Spring County and the subject property and build a new house. To that end, Joan executed a quitclaim deed (the March deed) on the subject property to Gentry and Andrea, husband and wife, on March 15, 2022, and she later delivered the quitclaim deed to Gentry. There are no restrictions, limitations, or reservations on the face of the quitclaim deed.

Unfortunately, two months later, Gentry was tragically killed in a boating accident on May 18, 2022. Only hours after Gentry's death, his brother, Bryant, asked Andrea if the quitclaim deed to the subject property had been recorded. Andrea told Bryant that it had not yet been recorded but that it was in Gentry's truck. The next morning following Gentry's death, Bryant asked Andrea again if the quitclaim deed had been recorded, and Andrea again told Bryant no. According to Joan's motion for summary judgment, Joan said that "the death of Gentry Len Ford raised reasonable concerns for her that her daughter-in-law [Andrea] may remarry or become involved in legal problems that would result in the loss of the real property. For those reasons," the morning after her son's tragic and untimely death, Joan executed a new quitclaim deed to herself and her surviving son, Bryant, leaving Andrea off the new deed (the May deed). The May deed was recorded a few hours later at 11:01 a.m. the same day.

3

Gentry died on Thursday, May 18, and on the following Monday, May 23, 2022, Andrea went to the Hot Spring County Courthouse to record the original March quitclaim deed and discovered that Joan or Bryant had already recorded the second May deed on May 19, the morning following Gentry's death. Andrea filed the original March deed at 9:14 a.m. on May 23, 2022.

## II. *Litigation*

On September 6, 2022, appellants filed a verified petition for quiet title of four tracts of property against Andrea individually. They alleged that Joan had executed a quitclaim deed on March 15, 2022 (March deed), "for the conveyance of the subject property to her son, Gentry Ford (Gentry), and his wife, Andrea Ford to be recorded after [Joan's] death, for the purpose of devising to her son his intended share of inherited land." Appellants explained that Gentry had unexpectedly died on May 18, 2022. The next day, on May 19, 2022, Joan had executed and recorded the May deed conveying the property to herself and Bryant, her other son, as tenants in common. Thereafter, Andrea recorded the March deed on May 23, 2022.

Appellants alleged in their petition that because the March deed was recorded after the May deed and did not also bear Bryant's signature, it was not a legal conveyance. Appellants therefore claimed that they rightfully owned the property to the exclusion of Gentry's widow, Andrea.

Andrea filed an answer on October 20, 2022, generally denying that appellants were the rightful owners of the property on October 20, 2022. She alleged that Bryant had

exercised undue influence over Joan in the execution of the May deed and in the filing of the petition for quiet title in addition to several other affirmative defenses. She therefore asked the circuit court to deny the petition and set aside the May deed. Andrea, as administratrix of the Estate, also filed a separate motion to intervene on behalf of the Estate, which the circuit court granted. In the Estate's petition in intervention, it alleged that Gentry had contributed his own time, funds, resources, and labor to the improvement and management of the property with the understanding that the property was his. It further alleged that the property had been exchanged between Joan and Gentry from time to time, but they had agreed that the property belonged to Gentry. Therefore, the Estate alleged that during the times the property was in Joan's name, Joan held title as a constructive trustee for Gentry. The Estate also asked the circuit court to set aside the May deed.

Appellants, Joan and Bryant, moved for summary judgment on December 1, 2022. They argued that they were entitled to summary judgment because the March deed could not be a valid deed because it was not also signed by Bryant;[3] there was no evidence to support any of the alleged defenses; there was no evidence that Joan was unduly influenced, and even if there was, both deeds would have to be set aside leaving Joan with exclusive ownership; the statute of frauds barred any conveyance of real property by oral agreement;

_____

[3]Appellants do not make any cogent argument or cite any authority or support as to why Bryant should have been required to sign the March deed when he had no interest in the property at the time of its March conveyance.

5

and Arkansas Code Annotated section 14-15-404 (Repl. 2013) established the priority of the May deed.

Appellees filed their response to appellants' motion for summary judgment on December 12, 2022. They generally denied that appellants were entitled to summary judgment. They argued that there were questions of fact and law in dispute and attached four affidavits in support, including an affidavit from Andrea, each of her two stepdaughters, and Cory Naylor (who was previously married to Gentry's former spouse).[4] Appellees alleged that Joan suffered from dementia and was being taken care of by Bryant. They argued that the May deed was therefore a product of undue influence. They further argued there was evidence to support the imposition of a constructive trust. Appellees stated that because there were issues of material fact and discovery requests still outstanding, summary judgment was inappropriate.

Appellees filed a supplemental response and a countermotion for summary judgment on March 6, 2023. They alleged that even though summary judgment was inappropriate with respect to appellants' motion, they nevertheless argued that they were entitled to summary judgment for the following reasons:

> a. [Appellants]' own statement of the facts and the affidavits provided by [appellees] establish that (1) the March 15, 2022 deed signed by Joan Foster was a gift deed to her son Gentry Ford and his wife, and (2) the gift deed was delivered to him prior to his death and prior to the filing of [Appellants'] second deed on May 19, 2022.

---

[4]The affidavits correspond to the narrative set forth in the *Relevant Facts* section heading above.

6

b.  Under these circumstances, a valid inter vivos gift was made under the March 15, deed effective upon delivery, regardless of the date of filing.  [Appellant] Joan Foster, the grantor in both deeds, had actual notice of the prior deed and the Second deed signed and filed on May 19 is not valid.

Appellees explained that appellants' reliance on Arkansas Code Annotated section 14-15-404 for entitlement to the property because the May deed was recorded first was misplaced.

Section 14-15-404(b) states the following:

> No deed, bond, or instrument of writing for the conveyance of any real estate, or by which the title thereto may be affected in law or equity, made or executed after December 21, 1846, shall be good or valid against a subsequent purchaser of the real estate for a valuable consideration *without actual notice thereof* or against any creditor of the person executing such an instrument obtaining a judgment or decree which by law may be a lien upon the real estate unless the deed, bond, or instrument, duly executed and acknowledged or proved as required by law, is filed for record in the office of the clerk and ex officio recorder of the county where the real estate is situated.

(Emphasis added.)  Applying the statute and applicable case law, appellees argued that there was a valid inter vivos gift when Joan executed the March deed and delivered it to Gentry before his death.  Because Joan and Bryant had actual notice of the March deed when the May deed was recorded, the exception under the statute applied, prohibiting appellants' assertion that they had priority because the May deed was recorded first.  Accordingly, appellees asked that appellants' motion for summary judgment be denied and that their countermotion be granted.

Appellants filed their response to the countermotion on March 7, 2023.  They generally denied appellees' argument that the March deed that was recorded after the May deed could be held to be superior and offered no affidavits in support.

A hearing on the motions was held on March 13, 2023, during which the parties orally argued their respective positions as already set out above. Appellants argued that the recording statute controlled and that they were entitled to the property because their deed was recorded first. They disagreed that Joan made an inter vivos transfer of the property to appellees through the March deed because the deed was given to Gentry and not Andrea. They explained that Joan did not intend to pass title immediately but gave the deed only in contemplation of Joan's death.

Appellees argued that Joan could not simply "cancel" the March deed. They explained that because the March deed was delivered to Gentry before his death and because Joan and Bryant had actual notice of the existence of the March deed, the exception to the recording statute applied. Although appellees acknowledged appellants' contention that Joan said the March deed was contingent upon her death, they pointed out that the deed did not have any limiting language.

In response, appellants explained that Joan could revoke any gift because the gift was given in contemplation of her death. Without much development, appellants also alleged that the legal principle of "causa mortis" applied in this case. In reply, appellees stated the following:

> She's discussing Ms. Foster's intent, yet we have a deed that does not mention anything about she wanted to wait until after she died. All of that is outside the deed. *There's no evidence of that at all.*

(Emphasis added.)

8

After hearing oral argument, the circuit court took the matter under advisement. Thereafter, the circuit court filed an order granting appellees summary judgment and denying appellants' petition for quiet title on July 10, 2023. The circuit court stated the following:

1. The court finds that the following are the undisputed facts before it:

   a. Gentry Ford, Andrea Ford, Tessa Naylor and Cory Naylor conveyed their ownership of the real property which is the subject of this action to the Plaintiff, Joan Foster, by Warranty Deed dated December 18, 2012, and filed of record on December 31, 2012.

   b. On March 15th, 2022, Joan Foster, the then sole owner of the said property, signed a quitclaim deed conveying her interest in the property to Gentry Len Ford and Andrea Ford.

   c. Joan Foster delivered the quitclaim deed to Gentry Len Ford sometime after March 15th, and before May 18, 2022. The deed was not immediately filed.

   d. On May 18, 2022, Gentry Len Ford died unexpectedly.

   e. On May 19, 2022, 1 day after Gentry Len Ford's demise, Joan Foster executed a second quitclaim deed conveying her same purported interest in the same real property to herself and Bryant K. Ford, jointly. This quitclaim deed was filed at 11:01 a.m. the same day.

   f. On May 23, 2022, 5 days after Gentry Len Ford's demise, the first quitclaim deed, from Joan Foster to Gentry Len Ford and Andrea Ford, was filed of record by Andrea Ford.

   g. Plaintiffs' Motion for Summary Judgment relies on the Arkansas Recording Act A.C.A. § 14-15-404 and the cases that stem therefrom for the premise that Arkansas is a "race" jurisdiction, the "first to file" their deed has superior title, and the filing itself places any subsequent purchaser on notice of the prior interest(s). Generally, this is a correct reading of the law. However, the Plaintiffs' analysis is misapplied here. Joan Foster, having already transferred her interest in the real property to Gentry and

Andrea by executing a quitclaim deed on March 15th, 2022, and thereafter delivering it to Gentry, had no interest remaining in the property. Further, she obviously had actual notice and knowledge of the prior deed – since she is the one who executed it - and this places her in the same legal position as if the deed were recorded. *See Austin v. Austin*, 237 Ark. 127, at 129. Under these circumstances the first quitclaim deed controls, regardless of recording, and is the superior title as it relates to the Plaintiffs.

2. There is no genuine issue as to any material fact herein, the Defendant/Intervenors have superior title, and the court finds that as a matter of law the Plaintiffs are unable to show a right and title to the land in themselves required for title to be quieted in them. Therefore, court grants summary judgment in favor of the Defendant/ Intervenors and hereby denies the Plaintiff's petition to quiet title.

This appeal followed.

### III. *Standard of Review*

Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Greenlee v. J.B. Hunt Transp. Servs.*, 2009 Ark. 506, 342 S.W.3d 274. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *McGrew v. Farm Bureau Mut. Ins. Co. of Ark.*, 371 Ark. 567, 268 S.W.3d 890 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Greenlee*, *supra*. However, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence. *Moses v. Bridgeman*, 355 Ark. 460, 139 S.W.3d 503 (2003).

On appellate review, this court determines if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Greenlee*, *supra.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties. *Id.* However, when there is no material dispute as to the facts, we determine on review whether "reasonable minds" could draw "reasonable" inconsistent hypotheses to render summary judgment inappropriate. *Town of Lead Hill v. Ozark Mountain Reg'l Pub. Water Auth.*, 2015 Ark. 360, 472 S.W.3d 118. In other words, when the facts are not at issue but possible inferences therefrom are, the court will consider whether those inferences can be reasonably drawn from the undisputed facts and whether reasonable minds might differ on those hypotheses. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000); *Mattox v. Main Entrance, Inc.*, 2021 Ark. App. 382.

IV. *Whether Genuine Issues of Material Fact Remain*

On appeal, appellants generally argue that the circuit court erred in granting appellees summary judgment because genuine issues of material fact remained regarding the nature of the March deed. More specifically, appellants first argue that genuine issues of material fact remained regarding whether Joan made a valid inter vivos gift when she executed and delivered the March deed to Gentry. We disagree.

A valid inter vivos gift is effective when the following elements are proved by clear and convincing evidence: (1) the donor was of sound mind; (2) an actual delivery of the property took place; (3) the donor clearly intended to make an immediate, present, and final gift; (4) the donor unconditionally released all future dominion and control over the property; and (5) the donee accepted the gift. *Fletcher v. Fletcher*, 2011 Ark. App. 89, 381 S.W.3d 129. Here, there was no evidence presented below to refute that the first, second, fourth, and fifth elements were present. No one questioned the soundness of Joan's mind in executing the March deed. Joan further admitted that she executed the March deed naming both Gentry and Andrea as grantees, that the deed did not include any restrictions or limitations on its face, and that she delivered it to Gentry before his death. Therefore, at best, only the third element questioning whether Joan clearly intended to make an immediate, present, and final gift was at issue.

Appellants cite two cases in their brief discussing the elements required for an inter vivos gift. In *Bray v. Bray*, 132 Ark. 438, 201 S.W. 281 (1918), the supreme court discussed the challenge of proving the "intention" of the grantor. In *Bray*, the father gave his son a deed, and the next day, the father took it back and put it in a tin box in his trunk. Various witnesses contradicted each other on whether the father intended to immediately transfer his interest to his son. So, there was a question of delivery and intention. The *Bray* court explained, "We have said that the question of delivery is generally one of intention as manifested by acts or words, and that there is no delivery unless there is an intention on the part of both of the actors in the transaction to deliver the deed in order to pass the title

12

immediately to the land conveyed, and that the grantor shall lose dominion over the deed."

*Bray*, 132 Ark. at 440, 201 S.W. at 282.  In *Smith v. Van Dusen*, 235 Ark. 79, 357 S.W.2d 22 (1962), a similar fight was going on.  The *Smith* court stated the following:

> In *Hunter v. Hunter*, 216 Ark. 237, [241,] 224 S.W.2d 804[, 806 (1947)], it was said:
>
> > 'This court has held that there is no delivery of a deed unless what is said and done by the grantor and grantee manifests their intention that the instrument shall at once become operative to pass the title to the land conveyed and that the grantor shall lose dominion over the deed.  *Maxwell v. Maxwell*, 98 Ark. 466, 136 S.W. 172; *Van Huss v. Wooten*, 208 Ark. 332, 186 S.W.2d 174.'
>
> In the case of *Cavett v. Pettigrew*, 182 Ark. 806, 32 S.W.2d 808, this court quoted the case of *Battle v. Anders*, 100 Ark. 427, 140 S.W. 593, as follows:
>
> > 'The important question in determining whether there has been a delivery is the intent of the grantor that the instrument should pass out of his control and operate as a conveyance.  The intent of the grantor is to be inferred from all the facts and circumstances adduced in the evidence.  His acts and conduct are to be regarded in ascertaining his intent.'

*Smith*, 235 Ark. at 82, 357 S.W.2d at 24.

In the case at bar, what were Joan's "intentions as manifested by her acts or her words?"  As shown by appellees' uncontradicted affidavits, for the entire period of time that the property was in Joan's name, Gentry and Andrea ran the place, paid the bills and the taxes, and received all the rental income as their personal income.  There is absolutely no evidence in the record that when Joan executed the March deed and delivered it to Gentry, she manifested any other intent than that she meant to make an immediate, present, and final gift of the subject property to Gentry and Andrea with the March deed.  As a matter of fact, Joan admitted as much in appellants' motion for summary judgment.  According to her

motion, Joan manifested her contrary intention for the first time after Gentry was tragically killed. Joan said that "the death of Gentry Len Ford raised reasonable concerns for her that [Andrea] may remarry or become involved in legal problems that would result in the loss of the real property. For those reasons," the morning after Gentry's tragic and untimely death, Joan executed and recorded a new quitclaim deed to herself and Bryant, leaving Andrea off the May deed. However, Joan's subsequent change of heart did not change the fact that she made a valid inter vivos gift when she executed and delivered the March deed. Thus, considering the record before us and appellants' failure to meet proof with proof as required, we hold that there are no genuine issues of material fact on whether Joan completed her inter vivos gift of the subject property to Gentry and Andrea when she delivered the executed March deed. Accordingly, summary judgment was appropriate.

Appellants alternatively argue that the gift "could have been causa mortis," and that genuine issues of material fact therefore remained. Although appellants mentioned in passing the words "causa mortis" at the summary-judgment hearing, they failed to develop the argument and offered no evidence to meet proof with proof in support of this argument. *See Jade Prop. Holdings, LLC v. First Serv. Bank*, 2024 Ark. App. 414, 699 S.W.3d 136 (holding that conclusory assertions and general statements made in response to a summary-judgment motion did not rise to the level of a developed argument that preserved an issue for appellate review); *Rush v. Lynne Davis Fam. Ltd. P'ship*, 2022 Ark. App. 441, 655 S.W.3d 86 (affirming that appellees were entitled to adverse possession of the disputed property after appellants

failed to meet proof with proof establishing a contested issue of material fact barring summary judgment).  Accordingly, we affirm.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*T. Martin Davis*, for appellees.