Robert J. PARKER, Jr., and his wife
*v.* Mary Louise LAMB and
her husband

77-426                                    567 S.W. 2d 99

Opinion delivered June 19, 1978
(Division I)

*George F. Hartje,* of: *Hartje & Burton,* for appellants.

*Clark & McNeil,* for appellees.

GEORGE ROSE SMITH, Justice. This suit to cancel two deeds is between brother and sister: the appellant Robert J. Parker, Jr., and the appellee Mary Louise Lamb. The single question is whether the chancellor was right in holding that the deeds, executed by the parties' parents, were ineffective for want of delivery. We agree with the chancellor.

In 1971 the elder Parkers went to a trusted friend, who was an abstracter, for advice about the disposition of their· property upon their death. The abstracter had an attorney prepare the two deeds in question, one conveying the city homeplace to the daughter and the other conveying a farm (which became quite valuable) to the son. The abstracter told the Parkers to put the deeds in envelopes, to be delivered after their death. He said that they could do anything they wanted to with the property before they died, but if they still owned it at the time of their death it would go according to the deeds. Needless to say, the advice was erroneous.

Upon the elder Parker's death in 1974 the title passed to his widow as the surviving tenant by the entirety. Mrs. Parker kept the deeds in a storm cellar behind her home in Conway. The son, to prove delivery of the deeds, relies upon two incidents that occurred during his mother's last illness in 1976. In the first incident Mrs. Parker, during the final several days of her life, told her daughter that she could go down to the cellar, get the two envelopes, and tear them up if she wanted to. The daughter declined.

The second incident took place two days before Mrs. Parker's death. The son and daughter went together to the storm cellar upon another matter and noticed that the envelopes were not there. Knowing that their aunt, Mrs. Reidmatten, had another key to the storm cellar, they went next door to ask her about the envelopes. Mrs. Reidmatten had removed them, for safekeeping. She handed the envelopes to Robert, who kept them. He and his sister opened them just enough to be sure that the deeds were there. When Robert told his mother the next day about how he had come into possession of the envelopes, she said in effect: "Good enough. Take care of them. And for goodness' sake put them in a safe place." It is now argued that those words amounted to a ratification of Mrs. Reidmatten's manual delivery of the deeds.

No effective delivery is shown. The law wisely requires the delivery of a deed, as a positive act bringing home to the grantor that he is definitely parting with the ownership of his land. An essential element of a valid delivery is the grantor's intention to pass the title immediately. *Smith* v. *Van Dusen*, 235 Ark. 79, 357 S.W. 2d 22 (1962); *Hunter* v. *Hunter*, 216 Ark. 237, 224 S.W. 2d 804 (1949).

No such intention to pass title immediately could have existed in this case, because there is no suggestion whatever in the proof that Mrs. Parker did not still believe that the abstracter's advice — that the envelopes be delivered after her death — was sound. There is no possibility that Mrs. Parker, relying upon that advice, could have intended an inter vivos delivery of the deeds. In fact, the existence of any such intention is actually rebutted by her offer to let her daughter tear up the deeds and by her warning to her son to put the envelopes in a safe place. Those statements imply that she thought the eventual delivery of the envelopes would carry out her wishes after her death.

Affirmed.

We agree. HARRIS, C.J., and FOGLEMAN and HOLT, JJ.